FAULKNER, Justice.
D.M. Maxwell brought an action in which C.E. Brown intervened as a party plaintiff, seeking to force The Monroe County Bank to divest itself of First National Bank of Monroeville stock held by it. The complaint alleged that Monroe County Bank’s ownership of the stock was illegal and that the bank was not entitled to any of the incidents of ownership of the stock. After a trial on the merits, the trial court decided the issues in favor of the banks, and Brown appealed.
The Monroe County Bank, an Alabama banking corporation with its principal place of business in Monroeville, has held the majority of the outstanding capital stock of First National for over thirty years. First National, a national banking association, is located less than one block from Monroe County Bank and is its chief competitor for business in the area. Maxwell has been a minority stockholder in First National since 1929 and has owned approximately 20% of its stock since at least 1950. Since 1952, Maxwell has served as a member of First National’s board of directors and he was First National's president from 1952 until his retirement in 1973. Brown inherited twenty shares (about 2% of the total outstanding shares) of First National stock during the pendency of the litigation.
A conflict between Maxwell and Monroe County Bank arose in 1978 over a proposal supported by Monroe County Bank to consolidate the banks. Until that time the legality of Monroe County Bank’s ownership of First National stock had never been questioned. In fact, in his capacity as either president or cashier of First National, Maxwell personally executed each stock certificate which was issued to Monroe County Bank. While the proposal to consolidate the banks was pending, an attorney representing Maxwell, Brown’s predecessor, and some other stockholders sent a letter to Monroe County Bank offering to sell their First National shares. The letter stated, inter alia:
“We are willing to sell our stock and thus withdraw any and all objections to the merger and stop any possible litigation as to the value of our stock.
“We are considering the possibility of asking the Court to render the merger invalid due to the illegal ownership and voting of the First National Bank stock by the Monroe County Bank, however, a sale of our stock would preclude this possibility.”
Maxwell was eventually successful in frustrating the merger, and in February 1979, he brought this action. His claim that the stock was held illegally was based on § 5-5-17, Code of Alabama (1975), which stated:
“No bank shall make a loan taking its own stock as security therefor or directly or indirectly purchase shares of its own *147 stock, except in pursuance of provisions of law for reducing its capital stock. No bank shall subscribe for or own more than 10 percent of the capital stock of any other bank or invest or have invested an amount exceeding in the aggregate 25 percent of its own paid-in capital stock in the capital stock of any other bank or banks. Any bank acquiring capital stock in any other bank in the usual course of business in payment of an indebtedness owing to it must sell such portion of said stock as is in excess of the amount which it is permitted to hold and own as provided in this section within one year from the time the same is acquired. Any bank failing to sell any such excess stock within the time directed in this section shall forfeit to the state an amount equal to the face value of such excess stock held by it, which sum the superintendent of banks shall sue to recover in the name of the state in any court having jurisdiction, and the amount recovered shall be paid into the state treasury.”
During the pendency of the action the Gul-ledge-Cates Banking Reform Act of 1980 was enacted. It repealed the old banking code, of which § 5-5-17 was a part. The replacement provision, § 5-5A-27, states:
“No bank shall make a loan taking its own stock as security therefor or directly or indirectly purchase shares of its own stock, except in pursuance of provisions of law for reducing its capital stock. No bank shall subscribe for or own capital stock in any other bank except in the usual course of business in payment of an indebtedness or in order to prevent a loss on a debt owing to it and the bank must sell said stock within one year from the time the same is acquired unless this time period is extended by the superintendent; provided, however, that nothing in this section shall prohibit the ownership by any bank of any stock in another bank acquired prior to May 28, 1980.
The plaintiffs’ interpreted § 5-5A-27 as follows: Prior to 1980 Monroe County Bank could not have legally owned any more than 10% of First National Bank’s outstanding stock, due to the prohibition in § 5-5-17. The clause in the replacement provision “nothing in this section shall prohibit the ownership by any bank of any stock in another bank acquired prior to May 28, 1980” only allowed Monroe County Bank to continue holding stock in First National which it legally held prior to May 28, 1980, to wit, 10% of the outstanding shares. Both of the provisions, the plaintiffs argued, were in the nature of antitrust statutes. In support of their interpretation of the statute, the plaintiffs cited an opinion of the Comptroller of the Currency of the United States issued in connection with the proposed consolidation. That opinion, issued before § 5-5-17 was repealed, stated that the relationship between the banks “would appear to be a per se violation of [§ 5-5-17].”
The Superintendent of Banks of the State of Alabama, who, under the current banking code, has the exclusive authority to administer the state banking laws (see § 5-2A-1, Code of Alabama) filed an ami-cus brief. He stated that the banking department has been aware of Monroe County Bank’s stock holdings for many years and has never considered its ownership of First National stock to be violative of the banking laws. He maintained that § 5-5-17 did not apply to national banks. The term “bank” in § 5-5-17 only included an entity under the jurisdiction of the superintendent. Section 5-5-1, Code of Alabama (repealed). Because First National has always been a national bank, he said § 5-5-17 did not prohibit Monroe County Bank from owning its stock. Furthermore, the superintendent argued, the statute could, by its terms only be enforced by the banking department. It did not create a cause of action on behalf of the plaintiffs.
The banks’ arguments can be summarized as follows:
(1) Section 5-5-17 does not apply to First National’s stock because First National is not a state bank.
(2) Even if § 5-5-17 applied, it was repealed. Since the plaintiffs’ suit is not one for damages, but only seeks prospective *148 equitable relief, the new statute expressly exempting stock purchased prior to May 28, 1980, is controlling.
(3) No violation of the banking laws would create a personal cause of action for the plaintiffs. The state banking department has the exclusive authority to enforce the banking law. Section 5-2A-1, Code of Alabama.
(4) Even if the plaintiffs, or their predecessors in title, had an action it was barred by the doctrine of laches, the rule of repose, or both.
The trial court ruled that if the plaintiffs, or their predecessors in interest, ever had an action against the defendants it has been barred by the passage of time. We agree. In addition to the doctrine of laches, Alabama has recognized a rule of repose that operates as a bar to claims unasserted for twenty years. Boshell v. Keith, 418 So.2d 89 (Ala.1982). Since Monroe County Bank has owned its stock in First National for over thirty years, any actions by other stockholders challenging the legality of its ownership are barred.
The plaintiffs argued that neither the doctrine of laches nor the rule of repose should bar their action, since they sought to end the continuing violation of a law designed to protect the public by insuring competition between banks. Such an argument might have merit if the action had been brought by the state banking department. It is not persuasive in an action brought by private plaintiffs who recognized Monroe County Bank’s title to the shares for over thirty years, benefited during that time from high earnings, and who then sought, in the trial court’s words, to “use the alleged illegal ownership ... as an advantageous device to negotiate the sale of certain stock in [the banks].” We agree with the superintendent that the public policy issues involved militate against the plaintiffs. A forced divestiture by Monroe County Bank of one of its major assets would have an adverse impact on both banks.
The plaintiffs also argued that, by engaging in a competing business, Monroe County Bank breached its fiduciary obligation to the plaintiffs as minority stockholders. See Burt v. Burt Boiler Works, 360 So.2d 327 (Ala.1978). We have examined the record and have concluded that there was ample evidence to support the trial court's finding that First National has been an extremely profitable entity that has been well managed throughout the period that Monroe County Bank has owned a majority of its shares. This is not, however, the proper action in which to raise those issues. An action for breach of fiduciary duty by majority stockholders should be brought on behalf of the corporation. Galbreath v. Scott, 433 So.2d 454, 457 (Ala.1983).
In light of our affirmance based on the rule of repose, we pretermit discussion of the other issues raised. The decision of the trial court is hereby affirmed.
AFFIRMED.
ALMON, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., concurs in the result.