BRYAN, Judge.
Melvin E. Knoblett appeals from a judgment of the Montgomery Circuit Court affirming an order by the Alabama Board of Massage Therapy (“the Board”) revoking Knoblett’s license to practice massage therapy and levying an administrative fine against him in the amount of $10,000. We affirm.
Knoblett is the co-owner of a massage-therapy establishment, where he worked as a licensed massage therapist. On May 23, 2002, the Board filed an administrative complaint against Knoblett, charging him with engaging in unprofessional conduct in violation of § 34^43-15(a)(3), Ala.Code 1975, and various rules of the Board. The charges against Knoblett were based upon a written report filed with the Board by T.D., an adult female who had received massages from Knoblett. An administrative law judge (“the ALJ”) appointed by the Board held evidentiary hearings on the charges in June 2002, October 2002, and November 2002.
T.D. testified at the June 2002 hearing. The Board had hired T.D. to receive massages from Knoblett after Knoblett had entered into a consent order with the Board in April 2001 stating that he had illegally massaged the inguinal areas of female clients and had failed to follow proper draping procedures during massages.[1] T.D. testified that Knoblett touched her breast, nipples, buttocks, and genitalia during a massage on May 3, 2002. T.D. also testified that Knoblett, by virtue of his draping procedures, had exposed her breast during the May 3, 2002, massage.
Several witnesses testified at the hearings of October 2002 and November 2002, including Knoblett and expert witnesses called by both Knoblett and the Board. Knoblett gave testimony directly controverting T.D.’s testimony given at the June 2002 hearing regarding the May 3, 2002, massage. The expert testimony tended to show that, if T.D.’s allegations were accepted as true, Knoblett had engaged in unprofessional conduct as defined by statute and the rules of the Board.
On August 13, 2003, the ALJ issued a written recommendation finding that “[Knoblett] touched the breast, nipples of the breast, buttocks and genitalia[ ] of [T.D.], each on more than one (1) occasion and engaged in improper massage draping techniques during the massage on May 3, 2002.” The ALJ concluded that Knoblett had violated § 34-43-15(a)(3), Ala.Code 1975; Rule 532-X-3-.04(5)(i), Ala. Admin. Code (Alabama Board of Massage Therapy); Rule 532-X-5-.03(1)(d), Ala. Admin. Code (Alabama Board of Massage Therapy); and Rule 532-X-7-01(1)(i), Ala. Admin. Code (Alabama Board of Massage Therapy).
Section 34-43-15(a)(3), Ala. Code 1975, provides:
“(a) The board may suspend, revoke, or refuse to issue or renew a license or impose a civil penalty after notice and opportunity for a hearing pursuant to the Administrative Procedures Aet[, § 41-22-1 et seq., Ala.Code 1975], upon proof of any of the following:
[[Image here]]
“(3) The licensee has engaged in unprofessional conduct that has endangered or is likely to endanger the health, safety, and welfare of the public, as defined by the rules of the board.”
*644 Rule 532-X-3-.04(5)(i), Ala. Admin. Code (Alabama Board of Massage Therapy), provides:
“(5) The applicant [for licensure] may be requested to submit to the Board evidence of or written policy covering the following:
[[Image here]]
“(i) clean drape material for draping clients during the massage, use of which shall be explained to the client prior to the massage, and which shall cover the buttocks and genitals of a male client at all times during the massage, and which shall cover the buttocks, breasts, and genitals of a female client at all times during the massage.”
Rule 532-X-5-.03(l)(d), Ala. Admin. Code (Alabama Board of Massage Therapy), provides:
“(1) The following acts shall constitute misconduct in the practice of massage therapy for which disciplinary penalties may be imposed after opportunity to be heard pursuant to the procedure in the Alabama Administrative Procedures Act:
[[Image here]]
“(d) engaging in or attempting to or offering to engage a client in sexual activity, including but not limited to genital contact, within a client-massage therapist relationship.”
Rule 532-X-7-.01(l)(i), Ala. Admin. Code (Alabama Board of Massage Therapy), provides:
“(1) Massage therapists shall:
[[Image here]]
“(i) Refrain from engaging in any sexual conduct, behavior, or activities involving a client, even if the client attempts to sexualize the relationship.”
In the written recommendation, the ALJ recommended that the Board revoke Knoblett’s license to practice massage therapy. On August 22, 2003, the Board adopted the ALJ’s written recommendation as part of the final order of the Board. In addition to revoking Knoblett’s licence to practice massage therapy, the Board’s order levied a $10,000 administrative fíne against Knoblett, pursuant to § 34-43-15(a)(3), Ala.Code 1975. Knoblett appealed the Board’s order to the circuit court, which entered a judgment affirming the Board’s order on March 8, 2006. Knoblett timely appealed the circuit court’s judgment to this court.
Section 41-22-20(k), Ala.Code 1975, controls judicial review of agency decisions. In pertinent part, it provides:
“(k) Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute.... The court may reverse qr modify the decision or grant other appropriate relief from the agency action ... if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
“(1) In violation of constitutional or statutory provisions;
“(2) In excess of the statutory authority of the agency;
“(3) In violation of any pertinent agency rule;
“(4) Made upon unlawful procedure;
“(5) Affected by other error of law;
*645 “(6) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
“(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”
Our supreme court has stated:
“This Court has further defined the standard of review of an agency ruling in Alabama as follows:
“ ‘ “Judicial review of an agency’s administrative decision is limited to determining whether the decision is supported by substantial evidence, whether the agency’s actions were reasonable, and whether its actions were within its statutory and constitutional powers. Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency.” ’ ”
Ex parte Medical Licensure Comm’n of Alabama, 897 So.2d 1093, 1096-97 (Ala.2004) (quoting Ex parte Alabama Bd. of Nursing, 835 So.2d 1010, 1012 (Ala.2001), quoting in turn Alabama Medicaid Agency v. Peoples, 549 So.2d 504, 506 (Ala.Civ.App.1989)). “A presumption of correctness attaches to the decision of an administrative agency due to its recognized expertise in a specific, specialized area.” Hall v. Alabama Alcoholic Beverage Control Bd., 631 So.2d 1047, 1048 (Ala.Civ.App.1993).
On appeal, Knoblett first argues that the April 2001 consent order that he entered into with the Board was obtained upon unlawful procedure and, therefore, should have been invalidated by the circuit court. In February 2001, the Board filed an administrative complaint against Knoblett, based upon a female client’s allegations that he had engaged in unprofessional conduct during a massage. That complaint was resolved by the April 2001 consent order, which stated that Knoblett had violated § 34-43-15(a)(3), Ala.Code 1975, and Rule 532 — X—7—.01(1)(i), Ala. Admin. Code (Alabama Board of Massage Therapy). The consent order placed Knoblett on probation for a year and levied an administrative fine against him in the amount of $2,000. The consent order also stated that Knoblett’s “professional activities” would be “monitored” by the Board.
Knoblett argues that the “monitoring” provision in the consent order illegally enabled the Board to monitor Knoblett by hiring T.D. to receive massages from him. Knoblett notes that Rule 532-X-7-.01(l)(i), the violation of which gave rise to the consent order, was not made effective until March 5, 2001, after the Board had filed its first administrative complaint against him. Knoblett argues that, because Rule 532-X-7-.01(l)(i) was not effective when the complaint was filed against him in February 2001, the consent order was made upon unlawful procedure, the consent order should have been invalidated by the circuit court, and all evidence obtained in the present proceeding as a result of the “monitoring” provision in the consent order should have been excluded.
However, Rule 532-X-3-.04(7), Ala. Admin. Code (Alabama Board of Massage Therapy), grants the Board broad authority to initiate “inspections.” Rule 532-X-3 — .04(7), Ala. Admin. Code (Alabama Board of Massage Therapy), provides:
“Inspections may be initiated by the Board at any time during reasonable business hours after licensure of the establishment, which may include but are not limited to determining whether the establishment is in compliance with the rules governing the establishment’s operation, facilities, personnel, safety, sanitary requirements, and review of existing insurance coverage. Failure to *646 cooperate with such inspection may lead to disciplinary action.”
Rule 532-X-3-.04(7) is broad enough to include the Board’s “monitoring” of Knob-lett by hiring T.D. to receive massages from him. Rule 532-X-3-.04(7) became effective before T.D. was hired by the Board to receive massages from Knoblett. Therefore, regardless of the consent order, the Board possessed the regulatory authority to “monitor” Knoblett by hiring T.D. to receive massages from him.
Knoblett next argues that the Board violated his right to be free from unreasonable searches under the Fourth Amendment to the United States Constitution because, Knoblett says, the Board conducted a warrantless administrative search of his massage-therapy establishment.[2] Knoblett seems to argue that T.D.’s May 3, 2002, massage, which she was hired by the Board to receive, constituted a warrantless administrative search. The United States Supreme Court has held that “a Fourth Amendment search does not occur ... unless ‘the individual manifested a subjective expectation of privacy in the object of the challenged search,’ and ‘society [is] willing to recognize that expectation as reasonable.’ ” Kyllo v. United States, 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (quoting California v. Ciraolo, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)). In Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), the United States Supreme Court addressed whether a defendant’s Fourth Amendment rights were violated when the defendant had conversations with an undercover government informer in a hotel room. In that case, the Supreme Court stated:
“[T]he Fourth Amendment protects ... the security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home or his office, his hotel room or his automobile. There he is protected from unwarranted governmental intrusion. And when he puts something in his filing cabinet, in his desk drawer, or in his pocket, he has the right to know it will be secure from an unreasonable search or an unreasonable seizure....
“In the present case, however, it is evident that no interest legitimately protected by the Fourth Amendment is involved .... [The informer] was in the [hotel room] by invitation, and every conversation which he heard was either directed to him or knowingly carried on in his presence. The [defendant], in a word, was not relying on the security of the hotel room; he was relying upon his misplaced confidence that [the informer] would not reveal his wrongdoing....
“Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer’s misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.”
385 U.S. at 301-02, 87 S.Ct. 408 (footnotes omitted).
T.D.’s alleged search consisted of her simply receiving a massage from Knoblett. Knoblett has not established that he had a reasonable expectation of privacy in conducting typical business with the public at his massage-therapy establishment. Like the defendant in Hojfa who invited the informant into his hotel room, Knoblett invited T.D. to receive a massage at his massage-therapy establishment. See Ex parte Kraatz, 775 So.2d *647 801, 803 (Ala.2000) (quoting Raspilair v. Bruno’s Food Stores, Inc., 514 So.2d 1022, 1023 (Ala.1987)) (“ ‘Generally, a patron of a business ... is an invitee.’ ”). Similarly, Knoblett had no legitimate expectation that whatever wrongdoing he perpetrated during the May 3, 2002, massage of T.D. would not be reported to the authorities by T.D. Although she was hired by the Board, T.D. received massages from Knob-lett in the same manner as any other member of the general public might. “What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.” Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Accordingly, we conclude that T.D.’s receiving a massage from Knoblett does not constitute a Fourth Amendment search.
Knoblett next argues that § 34-43 — 15(a)(3), Ala.Code 1975; Rule 532-X-5-.03(l)(d), Ala. Admin. Code (Alabama Board of Massage Therapy); and Rule 532-X-7-.01(l)(i), Ala. Admin. Code (Alabama Board of Massage Therapy), are unconstitutionally overbroad, vague, and ambiguous.[3]
“ ‘[I]f regulatory [or statutory] language “provides a sufficiently definite warning so that the conduct sought to be prohibited may be ascertained or comprehended within the common meaning of words or practices, such language will not be held to be unconstitutionally vague.” Delavan v. Board of Dental Examiners, 620 So.2d [13] at 18 [ (Ala.Civ.App.1992) ] (quoting Board of Dental Examiners v. King, 364 So.2d 311, 316 (Ala.Civ.App.1977), reversed on other grounds, 364 So.2d 318 (Ala.), on remand, 364 So.2d 319 (Ala.Civ.App.1978)).’
“Kid’s Stuff Learning Ctr., Inc. v. State Dep’t of Human Res., 660 So.2d 613, 619 (Ala.Civ.App.1995).”
Ex parte Williamson, 907 So.2d 407, 417 (Ala.2004).
“ ‘Another guiding principle of particular importance is that courts seek to sustain, not strike down, the enactments of a coordinate department of government. Every legislative act is presumed to be constitutional and every intendment is in favor of its validity.’
“Wilkins v. Woolf, 281 Ala. 693, 697, 208 So.2d 74, 78 (1968) (overruled on other grounds, Tanner v. Tuscaloosa County Comm’n, 594 So.2d 1207 (Ala.1992)).”
Ex parte Boyd, 796 So.2d 1092, 1094 (Ala.2001).
Knoblett notes that the administrative complaint filed by the Board on May 23, 2002, alleged that he had “touched the inguinal area of a female client” but that the statute and rules applicable in this case do not explicitly prohibit a touching of the “inguinal area” during a massage. Knob-lett therefore contends that he was not given sufficient notice that a touching of the “inguinal area” was prohibited. Section 34 — 43—15(a)(3), Ala.Code 1975, authorizes the Board to discipline a licensee who “has engaged in unprofessional conduct that has endangered or is likely to endanger the health, safety, and welfare of the *648 public, as defined by the rules of the board.” Rule 532-X-5-.03(1)(d), Ala. Admin. Code (Alabama Board of Massage Therapy), prohibits “engaging in or attempting to or offering to engage a client in sexual activity, including but not limited to genital contact .... ” (Emphasis added.) Rule 532-X-7-.01(i), Ala. Admin. Code (Alabama Board of Massage Therapy), prohibits “engaging in any sexual conduct, behavior, or activities involving a client .... ” (Emphasis added.) The ALJ concluded that Knoblett had violated the applicable statute and rules by touching “the breast, nipples of the breast, buttocks and genitalia” of T.D. The statute and rules gave Knoblett sufficient warning that some of his actions while massaging T.D. were prohibited. Accordingly, we conclude that the applicable statute and rules are not unconstitutionally overbroad, vague, and ambiguous.
Knoblett next argues that his due-process rights were violated by a protective order entered by the ALJ preventing T.D. from testifying after the first administrative hearing in June 2002. At the June 2002 hearing, T.D. testified and was cross-examined by Knoblett’s counsel; T.D. did not testify at the hearings of October 2002 or November 2002. Knob-lett essentially argues that additional testimony by T.D. at the later hearings, after Knoblett and the experts had testified, would have aided his defense. However, Knoblett’s counsel had a full opportunity to cross-examine T.D. when she testified at the June 2002 hearing. Knoblett presents no authority for the contention that his due-process rights were violated by T.D.’s failure to testify at a subsequent hearing. In the context of administrative proceedings, due process requires that a party be given adequate notice of the charges against him and a reasonable opportunity to oppose those charges. Medical Servs. Admin. v. Duke, 378 So.2d 685, 686 (Ala.1979); and Goolsby v. Green, 431 So.2d 955, 959 (Ala.1983). Knoblett’s counsel cross-examined T.D. at the initial hearing; his due-process rights were not violated by the ALJ’s disallowance of additional testimony from T.D. at a subsequent hearing.
Knoblett next argues that his due-process rights were violated because, he says, the Board failed to follow certain rules of the Board regarding investigative procedures. First, Knoblett argues that the Board violated Rule 532-X-5-.04(1), Ala. Admin. Code (Alabama Board of Massage Therapy), which provides: “The Board may receive written complaints regarding licensees, registrants, applicants, entities, or other persons regarding massage therapy or violations of the massage therapy statutes.” Knoblett contends that Rule 532-X-5-.04(l) mandates that a written complaint is required before the Board may investigate a licensee or file an administrative complaint. We do not read Rule 532-X-5-.04(l) as establishing this requirement. Moreover, T.D. did file a written report alleging that Knoblett had behaved unprofessionally during the May 3, 2002, massage. T.D.’s written report formed the basis of the Board’s administrative complaint against Knoblett. Accordingly, Knoblett’s argument regarding Rule 532-X-5-.04(l) is without merit.
Knoblett also argues that the Board violated his due-process rights because, he says, the Board violated Rule 532-X-5-.04(2), Ala. Admin. Code (Alabama Board of Massage Therapy). That rule provides: “The Board will designate an investigator who is not a Board member to gather information regarding the complaint and present the information to the Board for its consideration.” The Board characterizes T.D. as an “investigator” and notes that she presented her written report to the Board. We find no violation of Rule 532- *649 X-5-.04(2) resulting in a violation of Knob-lett’s due-process rights.
Knoblett next argues that the Board’s order, which adopted the written recommendation of the ALJ, was not supported by substantial evidence and was clearly erroneous, unreasonable, arbitrary, and capricious. Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Knoblett contends that the ALJ relied upon hearsay evidence that was admitted over the objections of Knoblett’s counsel at the hearing of October 2002. In her written recommendation, the ALJ. refers to testimony by a former female coworker of Knoblett’s indicating (1) that she had received telephone calls from the public inquiring into the appropriateness of Knob-lett’s massage techniques used on female clients and (2) that she was aware that another female coworker was uncomfortable with a massage that she had received from Knoblett. However, the ALJ concluded that Knoblett had violated the applicable statute and rules based on findings of fact regarding Knoblett’s massage of T.D. on May 3, 2002. Discounting the female coworker’s testimony, the ALJ’s conclusions are supported by substantial evidence. Therefore, the admission of the female coworker’s testimony was harmless error. See Rule 45, Ala. R.App. P.; Muncher v. Muncher, 509 So.2d 250, 252 (Ala.Civ.App.1987) (stating that the admission of hearsay evidence was error without injury because the record contained sufficient evidence to affirm the judgment of the trial court, without regard to that evidence); and Ex parte T.D.T., 745 So.2d 899, 906 (Ala.1999).[4]
Knoblett argues that the ALJ failed to properly weigh certain evidence and improperly disregarded certain testimony. Our review on this issue, like that of the circuit court, is limited to determining whether the Board’s order, which adopted the ALJ’s written recommendation, is supported by substantial evidence. “In no event is a reviewing court ‘authorized to reweigh the evidence or to substitute its decisions as to the weight and credibility of the evidence for those of the agency.’ ” Alabama Bd. of Nursing v. Williams, 941 So.2d 990, 999 (Ala.Civ.App.2005) (quoting Ex parte Williamson, 907 So.2d 407, 416-17 (Ala.2004)). Although Knoblett submitted evidence that weighed in his favor, other, substantial evidence was submitted supporting the ALJ’s conclusion that Knoblett had violated the applicable statute and rules.
Knoblett next argues that the Board lacked statutory authority to both revoke his license and levy an administrative fine against him. Section 34-43-15(a), Ala.Code 1975, provides, in pertinent part: “The board may suspend, revoke, or refuse to issue or renew a license or impose a civil penalty after notice and opportunity for a hearing....” (Emphasis added.) Knoblett argues that the use of the disjunctive conjunction “or” in § 34-43-15(a) indicates that the Board may either “suspend, revoke, or refuse to issue or renew a licence” or “may impose a civil penalty,” but may not do both. The Board contends that § 34-43-15(a) grants the Board the authority to both revoke Knoblett’s license and levy an administrative fine against him.
*650 “This Court has held that the fundamental rule of statutory construction is to ascertain and give effect to the intent of the Legislature in enacting a statute. IMED Corp. v. Systems Engineering Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). If possible, a court should gather the legislative intent from the language of the statute itself. Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala.1985). If the statute is ambiguous or uncertain, the court may consider conditions that might arise under the provisions of the statute and examine results that would flow from giving the language in question one particular meaning rather than another. Clark v. Houston County Comm’n, 507 So.2d 902, 903-04 (Ala.1987). The legislative intent may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained by its passage. Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa County, 589 So.2d 687, 689 (Ala.1991) (citing Ex parte Holladay, 466 So.2d 956 (Ala.1985)).”
Norfolk Southern Ry. Co. v. Johnson, 740 So.2d 392, 396 (Ala.1999).
“[T]he legislature’s use of the disjunctive conjunction ‘or,’ as opposed to the conjunctive conjunction ‘and,’ is not conclusive with respect to the legislature’s intent. It is familiar law in the interpretation of statutes that the intent of the legislature is the polestar by which this Court must be guided and that this Court is at liberty in ascertaining the intent of the legislature to construe the disjunctive conjunction ‘or’ and the conjunctive conjunction ‘and’ interchangeably. In re Opinion of the Justices No. 98, 252 Ala. 194, 41 So.2d 559 (1949).”
Ex parte Jordan, 592 So.2d 579, 581 (Ala.1992) (construing a provision of § 6-5-390, Ala.Code 1975, that provides that “[a] father or a mother ... shall have an equal right to commence an action for an injury to their minor child” as giving both the father and the mother the right to commence an action). See also Barron v. CNA Ins. Co., 678 So.2d 735, 739-40 (Ala.1996) (stating that, in determining when a cause of action “aris[es] or aceru[es]” pursuant to § 14, Act No. 85-41, Ala. Acts 1984-85, the conjunction “or” is not to be interpreted as stating alternatives). But see Ex parte Uniroyal Tire Co., 779 So.2d 227 (Ala.2000) (declining to construe the conjunction “and” to mean “or” in strictly construing a tax statute against the department of revenue and in favor of the taxpayer).
We do not believe that the legislature intended to force the Board to choose between levying an administrative fine, on the one hand, and suspending, revoking, or refusing to renew a license to practice massage therapy, on the other hand. Our review of Alabama statutes governing professions and businesses reveals that the substantial majority of those statutes clearly grant licensing agencies the authority to suspend, revoke, or refuse to renew a license and, as an additional punishment, to levy an administrative fine. Many of those statutes were better drafted than the one before us and contain a separate provision clearly allowing for the additional punishment of an administrative fíne. See, e.g., § 34-1-12(b), Ala.Code 1975 (Alabama Board of Public Accountancy); § 34-7A-15(c), Ala.Code 1975 (Alabama Board of Cosmetology); § 34-21-25(a), Ala.Code 1975 (Alabama Board of Nursing); § 34-8A-16(c), Ala.Code 1975 (Alabama Board of Examiners in Counseling); and § 34-24-380, Ala.Code 1975 (Alabama Board of Medical Examiners). We find no Alabama statute that clearly limits the punishment an administrative agency may impose to either a fine, on the one hand, or a suspen *651 sion, revocation, or refusal to renew a license, on the other hand.
The purpose of the Board, like that of many administrative agencies, is “to protect the health, safety, and welfare of the public.” § 34-43-6(a), Ala.Code 1975. We conclude that the legislature did not intend to limit the Board’s ability “to protect the health, safety, and welfare of the public” by making the Board choose between levying a fíne, on the one hand, and suspending, revoking, or refusing to renew a ficense, on the other hand. “The terms ‘and’ and ‘or’ are often misused in drafting statutes.” 1A Norman J. Singer, Sutherland Statutory Construction § 21.14 at 183 (6th ed. 2002). We read § 34-43-15(a) as allowing for both the revocation of Knoblett’s license and the concurrent levying of an administrative fine. See Ex parte Jordan, supra; and Barron, supra.
Knoblett finally argues that the $10,000 administrative fine levied against him by the Board is excessive and violates the prohibition against “cruel and unusual punishment” found in the Eighth Amendment to the United States Constitution. Section 34-^43 — 15(a)(3), Ala.Code 1975, authorizes the Board to levy an administrative fine upon proof that “[t] he licensee has engaged in unprofessional conduct that has endangered or is likely to endanger the health, safety, and welfare of the public, as defined by the rules of the board.” Substantial evidence was submitted at the hearings indicating that Knoblett engaged in grievous unprofessional conduct, which the Board chose to punish severely. The Board’s punishment of Knoblett was supported by substantial evidence, was reasonable, and was within its statutory and constitutional powers. Ex parte Medical Licensure Comm’n of Alabama, supra. Accordingly, the Board acted within its discretion by fining Knoblett $10,000.
For the foregoing reasons, the circuit court’s judgment affirming the order of the Board is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and MOORE, J., concur.
THOMAS, J., concurs specially.
PITTMAN, J., concurs in the result, without writing.

. Merriam-Webster's Collegiate Dictionary 643 (11th ed. 2003) defines "inguinal” as "of, relating to, or situated in the region of the groin or in either of the lowest lateral regions of the abdomen.”

. The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.”

. Although Knoblett also states in his brief that Rule 532-X-3-.04(5)(i), Ala. Admin. Code (Alabama Board of Massage Therapy), is unconstitutionally overbroad, vague, and ambiguous, he does not present an argument regarding that rule. " 'An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless presented and argued in brief.' ” Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala.2003) (quoting Braxton v. Stewart, 539 So.2d 284, 286 (Ala.Civ.App.1988)).

. Knoblett also summarily states in his brief that the ALJ erred by admitting into evidence T.D.’s written report to the Board. However, Knoblett does not present an argument supporting this contention. See footnote 3, supra.