DONALDSON, Judge.
The Alabama Board of Examiners in Psychology (“the Board”) appeals a judgment of the Montgomery Circuit Court (“the circuit court”) dated September 6, 2012, in which the circuit court reversed a decision of the Board to sanction Dr. C. Fletcher Hamilton, a licensed psychologist in Jefferson County, for entering into a sexual relationship with a patient in 1982, in violation of §§ 34-26-3 and 34-26^6, Ala.Code 1975. The circuit court “reversed and set aside” the Board’s decision, citing the rule of repose and the doctrine of laches as grounds, and remanded the action to the Board. For the reasons stated herein, we reverse the circuit court’s judgment, and we render judgment in favor of the Board.

Factual Background and Procedural History

In October 2010, L.M.[1] filed a complaint with the Board alleging that between 1982 and 1994 Hamilton had engaged in an inappropriate romantic relationship with her while simultaneously providing her therapeutic psychological treatment. On January 26, 2011, the Board filed a formal administrative complaint against Hamilton alleging that he had violated §§ 34-26-3 and 34-26-46, Ala.Code 1975, by engaging in sexual contact with L.M., a patient. As a part of his defense in the administrative proceeding conducted before an administrative law judge (“ALJ”) pursuant to the Alabama Administrative Procedure Act (“AAPA”), § 41-22-1 et seq., Ala.Code 1975, Hamilton asserted the doctrine of laches in his answer to the Board’s complaint and the rule of repose in a motion for a summary judgment. Both defenses were rejected by the ALJ prior to the commencement of the administrative hearing.
At the administrative hearing held on May 25 and 26, 2011, the ALJ received testimony from various witnesses, including L.M. and Hamilton. The record reveals that L.M. sought psychological treatment from Hamilton in April 1982 for myriad issues and that physical contact between Hamilton and L.M. commenced during the first few sessions. L.M. and Hamilton exchanged cards, letters, and pictures at various times between 1982 and 1994. L.M. also kept a calendar in 1982 of all of her activities, in which she detailed her professional and personal interactions with Hamilton. The correspon *1089 dence and the calendar were admitted into evidence at the hearing.
Testimony indicates that most of Hamilton’s professional records concerning his treatment of L.M. between April and June 1982 had been destroyed in the regular course of business in February 2010. However, the record reveals that Hamilton’s office retained the “face sheets,” or patient-intake forms, completed during that period. On the bottom of the intake form L.M. completed in April 1982, which was admitted into evidence at the administrative hearing, a handwritten notation had been made to indicate that Hamilton last saw L.M. as a patient on or around June 18,1982.
On September 2, 2011, the ALJ rendered detailed written findings and recommendations. The ALJ found that the relationship between L.M. and Hamilton had become romantic after June 18, 1982, the date Hamilton last billed L.M. as a patient. The ALJ also found that Hamilton, despite the discontinuation of billing for his services, continued to provide L.M. with therapeutic advice through September 1982 on matters for which she had initially sought psychological treatment. The ALJ ultimately concluded that “the greater weight of the evidence established] that some sexual physical contact occurred during the course of the therapeutic relationship in 1982” and that the coexisting therapeutic and romantic relationships ended sometime in September 1982. The ALJ determined that “the prer ponderance of the evidence demonstrated] that Hamilton crossed the ethical professional boundaries regarding sexual intimacies with a client during the summer and early fall of 1982.” The ALJ found, however, that the evidence was insufficient to establish that either a romantic or a therapeutic relationship existed beyond 1982, stating that L.M.’s “account of those events is not corroborated by any other credible source. In fact, her accounts were contradicted by the evidence, particularly her own letters to Hamilton. Therefore, ... the evidence failed to demonstrate that Hamilton violated the Professional Ethical Standards of Care from October 1982 through June 1994.”
The ALJ ultimately determined that Hamilton had engaged in an inappropriate relationship with L.M. in violation of §§ 34-26-3 and 34-26-46, Ala.Code 1975, during the period beginning in June 1982 and ending in September 1982, and recommended that the Board impose sanctions against Hamilton, including placing him on probationary status for a six-month period and temporarily suspending his license, conditioned on his reimbursement to the Board of one-half the Board’s expenses associated with prosecuting the administrative action. On September 22, 2011, the Board issued -a final order accepting the ALJ’s findings and implementing, in part, the ALJ’s recommendations of sanctions. The Board imposed additional sanctions beyond those recommended by the ALJ, including placing Hamilton on probationary status for a one-year period; temporarily suspending his license, conditioned not only on his reimbursement to the Board of one-half the expenses associated with prosecuting the administrative action, but also on his seeking treatment with a therapist approved by the Board; placing restrictions on his accepting any new female clients until he had completed therapy and received the Board’s approval; and requiring him to notify all of his existing clients of the administrative action.
On September 26, 2011, Hamilton filed a notice of appeal with the Board pursuant to § 41-22-20, Ala.Code 1975, in order to appeal the Board’s decision to the circuit court. Hamilton filed a petition for judicial review in the circuit court on September 27, 2011. He also filed in the circuit court a petition for a temporary restraining order and for a preliminary injunction or to stay imposition of the Board’s sane- *1090 tions. On October 19, 2011, the circuit court granted the motion to stay and enjoined enforcement of the Board’s order. On November 8, 2011, Hamilton filed a motion in the circuit court requesting that the order of the Board be reversed and vacated. Hamilton based his motion, in part, on the assertion that the Board’s action was barred by the rule of repose. The circuit court subsequently held a hearing on the appeal, but no additional testimony was taken. On September 6, 2012, the circuit court entered a judgment reversing the Board’s final order, holding in pertinent part:
“To impose sanctions based on alleged acts that occurred more than 28 years ago is barred by the rule of repose and/or the doctrine of [laches]....
“Based upon the foregoing, the decision of the Board is reversed and set aside. This case is REMANDED to the .Alabama Board of Examiners in Psychology.”
The circuit court cited the following cases in support of its judgment: Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d 758 (Ala.2002); Ex parte Grubbs, 542 So.2d 927 (Ala.1989); Christ Hosp. & Med. Ctr. v. Human Rights Comm’n, 271 Ill.App.3d 138, 648 N.E.2d 201, 207 Ill.Dec. 745 (1995); Mank v. Board of Fire & Police Comm’rs, Granite City, 7 Ill.App.3d 478, 288 N.E.2d 49 (1972); and Appeal of Plan-tier, 126 N.H. 500, 494 A.2d 270 (1985).
The Board filed an appeal to this court on October 4, 2012. On appeal, the Board asserts (1) that Hamilton did not properly raise the defense of laches before the circuit court; (2) that, although the doctrine of laches applies to proceedings under the AAPA, it is not applicable in the present case; and (3) that the rule of repose is not applicable to administrative actions commenced by the State of Alabama. This court granted the motion of the Alabama Board of Nursing, the Alabama Board of Social Work Examiners, and the Board of Dental Examiners of Alabama to file briefs as amici curiae. Oral arguments of the parties and of the amici curiae were heard on August 15, 2013.

Standard of Review

“Our standard of review mirrors that of the circuit court:
“ ‘ “Judicial review of an agency’s administrative decision is limited to determining whether the decision is supported by substantial evidence, whether the agency’s actions were reasonable, and whether its actions were within its statutory and constitutional powers. Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency.” ’
“Ex parte Alabama Bd. of Nursing, 835 So.2d 1010,1012 (Ala.2001) (quoting Alabama Medicaid Agency v. Peoples, 549 So.2d 504, 506 (Ala.Civ.App.1989)).”
Alabama Bd '. of Nursing v. Williams, 941 So.2d 990, 995 (Ala.Civ.App.2005). Section 34-26-48, Ala.Code 1975, provides, in part:
“Any action of, or ruling or order made or entered by the [B]oard ... recommending suspension or revocation of a certificate or license shall be subject to review by the courts of this state in the same manner and subject to the same powers and conditions as now provided by law in regard to rulings, orders, and findings of other quasi-judicial bodies in Alabama, where not otherwise specifically provided.”
Judicial review of administrative-agency actions is limited by § 41-22-20(k), Ala. Code 1975, which states:
“(k) Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to *1091 the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
“(1) In violation of constitutional or statutory provisions;
“(2) In excess of the statutory authority of the agency;
“(3) In violation of any pertinent agency rule;
“(4) Made upon unlawful procedure;
“(5) Affected by other error of law;
“(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
“(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”

Analysis

I. Failure to Raise the Issue of Laches on Appeal to the Circuit Court
The Board first contends that Hamilton failed to raise the doctrine of laches as a defense in his appeal to the circuit court; thus, the Board argues, the circuit court could not have properly relied on laches to overturn the Board’s order. In support of this argument, the Board cites Knoblett v. Alabama Board of Massage Therapy, 963 So.2d 640 (Ala.Civ.App. 2007). In Knoblett, this court noted that “ ‘ “[a]n appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless presented and argued in brief.” ’ ” 963 So.2d at 647 n. 3 (quoting Tucker v. Cullman-Jefferson Cntys. Gas Dist., 864 So.2d 317, 319 (Ala.2003), quoting in turn Braxton v. Stewart, 539 So.2d 284, 286 (Ala.Civ.App.1988)). The argument asserted in Knoblett involved the failure of a party to raise an issue in a brief before this court, not the failure to raise a defense in an appeal of an administrative determination in the circuit court.
Section 41-22-20(h)(4), Ala. Court 1975, requires a party petitioning for review of an administrative determination in the circuit court to assert in the petition “[t]he grounds on which relief is sought.” Without mentioning either the doctrine of lach-es or the rule of repose, Hamilton essentially asserted in his petition that the Board’s final order was due to be reversed under the standards set forth in § 41-22-20(k)(l) — (7).
It is evident from the record that Hamilton raised the doctrine of laches as a defense in the administrative proceeding before the ALJ. The Board was apprised of Hamilton’s reliance upon laches as a defense before the administrative hearing was conducted. At no time did Hamilton abandon that defense. In fact, the Board’s response to Hamilton’s motion for a summary judgment filed in the administrative proceeding briefed the issue of laches extensively. Based on the foregoing, we hold that the issue of the applicability of the defense of laches was properly before the circuit court and, consequently, is properly before this court.
II. Applicability of the Defense of Laches
This court has previously recognized that the doctrine of laches is applicable to administrative proceedings in instances where the legislature has not *1092 defined a period of limitation for commencing such proceedings. See Chafian v. Alabama Bd. of Chiropractic Exam’rs, 647 So.2d 759, 762 (Ala.Civ.App.1994) (“Where there is no statutory time limitation applicable to the administrative proceeding, the issue of whether the action should be barred by time depends on the question of laches.” (citing Appeal of Plantier, 126 N.H. 500, 494 A.2d 270 (1985), and 2 Am.Jur.2d Administrative Law § 321 (1962))). Our supreme court has defined laches as
“neglect to assert a right or a claim that, taken together with a lapse of time and other circumstances causing disadvantage or prejudice to the adverse party, operates as a bar. See Black’s Law Dictionary 787 (5th ed. 1979). Laches is an equitable doctrine designed to prevent unfairness to a defendant ... due to a plaintiffs ... delay in filing suit, in the absence of an appropriate statute of limitations. Equal Employment Opportunity Commission v. Dresser Industries, Inc., 668 F.2d 1199 (11th Cir.1982). It is based on the public policy discouraging stale demands and is not based upon mere lapse of time. It is principally a question of the inequity of permitting a claim to be enforced where some change in condition has taken place that would make the enforcement of the claim unjust. Davis v. Alabama Power Co., 383 F.Supp. 880 (N.D.Ala.1974), affirmed, 542 F.2d 650 (5th Cir.1976), affirmed, 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977). It is designed to prevent unfairness caused by a party’s delay in asserting a claim or by his failure to do something that equity would have required him to do. Sims v. Lewis, 374 So.2d 298 (Ala.1979); United States v. Olin Corp., 606 F.Supp. 1301 (N.D.Ala.1985); Golightly v. Golightly, 474 So.2d 1150 (Ala.Civ.App.1985).”
Ex parte Grubbs, 542 So.2d 927, 928-29 (Ala.1989). “The party asserting laches bears the burden of proving that the delay was unreasonable and that prejudice resulted from the delay.” Chafian, 647 So.2d at 762. “Classic elements of undue prejudice, for purposes of determining the applicability of the doctrine of laches, include the unavailability of witnesses, changed personnel, and the loss of pertinent records.” Grubbs, 542 So.2d at 929 (citing Equal Employment Opportunity Commission v. Dresser Indus., Inc., 668 F.2d 1199 (11th Cir.1982)).
For the equitable doctrine of laches to bar an action, the evidence must show that a delay has caused such prejudice or disadvantage to a party that permitting the proceedings to continue would be fundamentally unfair. In the present case, Hamilton has asserted two specific examples of prejudice that he claims to have suffered in presenting a defense against L.M.’s allegations. First, he contends that his treatment records pertaining to L.M. had been destroyed in the regular course of business and could not be utilized in his defense to the Board’s action. Second, Hamilton contends that the ALJ found L.M. to be an unreliable witness concerning the events occurring between 1983 and 1994 and that, therefore, the ALJ should have found L.M.’s testimony to have been equally unreliable concerning the events occurring in 1982.
After a review of the record, and taking into consideration the arguments of the parties in their briefs and in oral arguments, we conclude that Hamilton failed to sufficiently establish that prejudice or disadvantage resulted from the lapse of time such that the defense of laches should have barred the proceedings. A showing that records have been destroyed, alone, is not sufficient. The party asserting laches must also prove to the trier of fact that the lack of the pertinent records renders the administration of justice difficult, if not *1093 impossible. Salter v. Hamiter, 887 So.2d 230, 241 (Ala.2004). The evidence here does not meet that standard. Although Hamilton established that most of his treatment records for L.M. were destroyed in February 2010, there is no specific showing of how those records could have disproved the fact that he had engaged in an inappropriate relationship with L.M. Hamilton asserted on appeal to the circuit court that the missing records could have provided details concerning the contacts between him and L.M. and that they could have helped him to establish the beginning and end dates of their professional relationship. Based upon our review of the record, the destroyed documents would not have assisted the trier of fact in determining those issues. Hamilton testified at the administrative hearing that he last billed L.M. for services around June 18, 1982. The undestroyed records, i.e., the “face sheets,” which were admitted into evidence, also support Hamilton’s contention that the formal, in-office counseling sessions ended on or around June 18,1982. That contention is not at odds with the ALJ’s determination. However, the ALJ found that, despite the fact that he stopped billing L.M. on June 18, 1982, Hamilton continued to provide L.M. with therapeutic advice throughout the summer and fall of 1982, including advice on matters for which she had sought psychological treatment. Based on the record before us, Hamilton’s treatment records could not have provided information to dispute that finding, because they would have provided details concerning only the April to June 1982 time frame. The findings of the ALJ established that the misconduct upon which sanctions were based occurred between June 18 and September 1982. Testimony indicates that there would not have been any treatment records during this period, because the formal treatment sessions ended on June 18. Thus, the destroyed treatment records would not have provided any basis to disprove the existence of either a romantic relationship or a therapeutic relationship between the summer and early fall of 1982, during which, the ALJ determined, Hamilton had engaged in a romantic relationship with L.M. while continuing to provide her therapeutic services.
Although most of Hamilton’s treatment records were not available, the record is replete with other documentation memorializing the interaction between Hamilton and L.M. in 1982. That documentation includes L.M.’s calendar, as well as written correspondence between Hamilton and L.M., some of which is in Hamilton’s own handwriting. Although some of that documentation may have been unfavorable to Hamilton in the sense that the ALJ might have relied upon it to determine that a romantic relationship existed, the existence of that documentation undercuts any argument that Hamilton has been prejudiced by a lack of records. The voluminous written evidence that does exist in the record leads us to conclude that it was not “ ‘too late to ascertain the merits of the controversy.’ ” Meeks v. Meeks, 251 Ala. 435, 437, 37 So.2d 914, 916 (1948) (quoting 30 C.J.S. Equity § 119, p. 543).
The other example of prejudice Hamilton raises on appeal is that L.M. was an unreliable witness. The ALJ questioned L.M.’s account of the events occurring subsequent to 1982, and it is apparent from the recommendations and findings that the ALJ weighed the evidence concerning these alleged interactions between Hamilton and L.M. and concluded that the weight of the evidence did not support L.M.’s allegations as to these matters. Likewise, the ALJ weighed the evidence concerning the allegations relating to events occurring in 1982, and she found L.M.’s account to be credible and supported by the evidence. Further, the rec *1094 ord does not show how any of Hamilton’s destroyed records would have affected the ALJ’s assessment of L.M.’s credibility. As the trier of fact in this matter, the ALJ had “ ‘the advantage of observing the witnesses’ demeanor and ha[d] a superior opportunity to assess their credibility, [and, therefore, an appellate court] cannot alter the [ALJ’s decision] unless it is so unsupported by the evidence as to be clearly and palpably wrong.’ ” Ex parte Fann, 810 So.2d 631, 636 (Ala.2001) (quoting Ex parte D.W.W., 717 So.2d 793, 795 (Ala.1998)).
“ ‘[The appellate court is not] allowed to reweigh the evidence in this case. This [issue] ... turns on the [trier of fact’s] perception of the evidence. The [trier of fact] is in the better position to evaluate the credibility of the witnesses ... and the [trier of fact] is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence....’”
Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1326 (Ala.1996)). The ALJ’s findings are entitled to deference, and neither the circuit court nor this court is authorized to substitute its judgment as to the findings of the ALJ on this issue. See § 41-22-20(k), Ala.Code 1975 (“the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute”); see also Alabama Bd. of Nursing v. Williams, 941 So.2d at 999 (“In no event is a reviewing court ‘authorized to reweigh the evidence or to substitute its decisions as to the weight and credibility of the evidence for those of the agency.’ ” (quoting Ex parte Williamson, 907 So.2d 407, 416-17 (Ala. 2004))). The ALJ weighed L.M.’s credibility as a witness as to the allegations of misconduct between 1982 and 1994 and applied her judgment accordingly.
Although laches is an available defense and could form the basis of a reversal of an agency’s decision under § 41-22-20(k)(7), Ala.Code 1975, on the ground that the agency decision is “unreasonable,” the record here fails to show how any delay in L.M.’s reporting the allegations caused actual prejudice or actual disadvantage to Hamilton. Consequently, and consistent with the deference we must afford to the Board’s decision, we conclude that the doctrine of laches does not support providing Hamilton relief from the Board’s final order.
III. Rule of Repose
In its judgment, the circuit court also reversed the Board’s disciplinary order based, in part, on the rule of repose. The applicability of the rule of repose to administrative proceedings appears to be a question of first impression.
“‘The common-law rule of repose, which is an affirmative defense, Rector v. Better Houses, Inc., 820 So.2d 75, 78 (Ala.2001), “bars actions that have not been commenced within 20 years from the time they could have been commenced.” Tierce v. Ellis, 624 So.2d 553, 554 (Ala.1993). ’The rule of repose “is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence [has been] obscured.” Boshell v. Keith, 418 So.2d 89, 91 (Ala.1982). “Lack of notice is not sufficient to avert the application of the [rule of repose].” Ballenger v. Liberty Nat’l Life Ins. Co., 271 Ala. 318, 322, 123 So.2d 166, 169 (1960); accord Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d 758, 764 (Ala.2002), and Ex parte Liberty Nat’l Life Ins. Co., 858 So.2d 950, 957-59 (Ala.2003) (Johnstone, J., dissenting). “[T]he only element of the rule of repose is time.” Boshell 418 So.2d at 91.’ ”
*1095 Snider v. Morgan, 113 So.3d 643, 650 (Ala.2012) (quoting American General Life & Accident Ins. Co. v. Underwood, 886 So.2d 807, 812 (Ala.2004)). The applicability of the rule of repose does not hinge on the denial of any substantive or procedural due-process rights; rather the rule serves as an absolute bar against stale claims, and the only element necessary for its application is the passage of time. Unlike the doctrine of laches, which requires an analysis of prejudice or disadvantage based on the circumstances of the case, and which might apply to invalidate an agency’s decision under § 41-22-20(k)(7), Ala.Code 1975, the rule of repose serves as an absolute bar to any proceedings.
The AAPA sets out a statutorily created process applicable to state agencies and boards. The rule of repose is a creature of common law and not a statute. Judicial review of administrative-agency decisions is extremely limited, and a court may reverse an agency decision based only on specifically listed grounds. Courts are authorized to grant “appropriate relief from the agency action, equitable or legal,” only if specific grounds are established. § 41-22-20(k), Ala.Code 1975. We recognize that one of the grounds for reversal of an agency decision is if the decision is “[ajffected by other error of law.” § 41-22-20(k)(5), Ala.Code 1975. But we do not find any legislative intent to support the argument that the failure to apply the rule of repose amounts to an “error of law” sufficient to support a court’s reversal of an agency decision against a licensee; moreover, the rule of repose has not been codified as part of the AAPA for application to administrative proceedings. In fact, the legislature has not applied any limitations period to complaints initiated by the Board. In enacting the AAPA and the laws governing the Board, the legislature could have imposed a limitations period, including the rule of repose, to apply to complaints initiated by the Board, but it did not do so.
“The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.”
IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992).
Perhaps the legislature reasoned that administrative agencies should have the authority to prosecute claims against their licensees regardless of when the alleged misconduct occurred. As we stated in Ex parte Medical Licensure Commission of Alabama, 13 So.3d 397, 410 (Ala.Civ.App.2008):
“The state has not only a strong interest, but an obligation, to protect the health, safety, and welfare of its citizens. The state’s interest is far superior to the right of any individual to practice his profession, especially when incompetency or misconduct in the practice of that profession can threaten life itself.”
Our supreme court has previously held that when the state has an interest in correcting a public wrong, rules of prescription, such as the rule of repose, are not available to bar the state from correcting that wrong. See Folmar Mercantile Co. v. Town of Luverne, 203 Ala. 363, 364, 83 So. 107, 108 (1919) (“It is because no right can be predicated of such a public wrong that neither rules of prescription nor statutes of limitations are available to preserve, against injunctive process, the offending status in a public highway.”). In *1096 Brown v. First National Bank of Monroe-ville, 447 So.2d 145, 148 (Ala.1983), our supreme court stated in dicta that the state may have a meritorious argument to overcome a defense of the rule of repose, as well as the doctrine of laches, when it seeks to end a violation of a law that is designed to protect the public.
Thus, we conclude that there is no statutory basis for application of the rule of repose in the administrative setting unless or until the legislature directs otherwise. We hold that rejection of the applicability of the common-law rule of repose in administrative proceedings does not implicate any constitutional due-process rights, is not a violation of any statute, and does not amount to an “error of law.” See § 41-22-20(k)(5), Ala.Code 1975. Therefore, Hamilton cannot rely on the rule of repose to defend against the Board’s complaint.

Conclusion

A court may set aside an administrative agency’s decision only if the record establishes one of the specific grounds listed in § 41-22-20(k), Ala.Code 1975. We are not permitted to substitute our judgment for that of the Board, regardless of whether we would have made the same decision. Because the record does not support a holding that the doctrine of laches was sufficiently established to overturn the Board’s decision, and because the rule of repose is inapplicable to administrative proceedings, the circuit court’s judgment in this matter must be reversed.
REVERSED AND JUDGMENT RENDERED.
THOMPSON, P.J., concurs.
PITTMAN, J., concurs in part and concurs in the result, with writing, which THOMAS, J., joins.
MOORE, J., concurs in the result, without writing.

. This court granted a motion to refer to the complainant using only her initials.