[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 993 
The Alabama Board of Nursing ("the Board") appeals from a judgment of the Montgomery Circuit Court reversing an order of the Board that had suspended a license issued to Michael Williams to practice professional nursing and had imposed other disciplinary sanctions against Williams. We reverse the circuit court's judgment.
The record reveals that Williams was first licensed by the Board as a professional nurse in 1985; since 1990, he has been principally employed as a nursing instructor at Bishop State Community College ("the College"). However, beginning in 1991, a series of complaints were lodged against Williams to the effect that he had sexually harassed female students at the College. The College investigated two of those complaints, in 1992 and in 1995, but ultimately concluded that they lacked evidentiary support beyond the accusers' statements and determined that Williams should not be disciplined as to his employment. A third complaint, lodged in November 2000, was apparently not found to warrant discipline on the part of the College.
In 2001, the former husband of one of Williams's students filed complaints with the president of the College, with the Alabama Department of Postsecondary Education, and with the Board arising from Williams's alleged amorous relationship with that student. Although the Department *Page 994 
of Postsecondary Education concluded that Williams had not violated policies of the College or of the State Board of Education, the Board undertook its own investigation of the sexual-harassment claims that had been brought against Williams.
In May 2002, the president of the College, after a hearing, indicated that Williams's employment would be terminated effective May 27, 2002, "based upon [his] continued insubordination and ineffective instruction." A letter sent by the president to Williams cited, as a basis for his termination, his having failed to complete an administrative assignment that he had received from the president and alluded to "several serious student complaints" appearing in his personnel file, "including complaints of sexual harassment which are being investigated currently by the Alabama Board of Nursing." Williams later sought review of his termination from employment before a three-person employee-review panel, which was permitted under Ala. Code 1975, §§ 36-26-105 and 36-26-106, as they read in 2002 before the enactment of Act No. 2004-567, Ala. Acts 2004. The panel found that Williams had failed to complete an assignment as directed by the president of the College, had confronted a female coworker "in a manner unbecoming to a faculty member," and had arrived late to a mandatory meeting; however, exercising its prerogative to review Williams's punishment de novo, the panel determined that "termination was not the proper punishment for th[o]se transgressions" and instead imposed an unpaid 42-day suspension. On certiorari review, the Mobile Circuit Court entered a judgment affirming that determination, and this court, in turn, affirmed that judgment. Bishop State Cmty. Coll. v.Williams (No. 2021213, June 11, 2004), 915 So.2d 1184
(Ala.Civ.App.) (table), cert, denied, (No. 1031488, August 13, 2004) 920 So.2d 1142 (Ala. 2004) (table).
On July 11, 2003, the Board issued a "Statement of Charges and Notice of Hearing" in which the Board ordered Williams to appear and show cause why his license to practice professional nursing should not be revoked on the basis that "[o]n multiple occasions from 1991 to 2001, [Williams] had engaged in inappropriate conduct of a sexual nature with students" at the College. According to the Board's statement and notice, Williams's conduct constituted grounds for disciplinary action under §34-21-25, Ala. Code 1975, and under Board regulations barring, among other things, the exhibition of inappropriate or unprofessional conduct or behavior in the work-place. After a hearing before a hearing officer had been held, the Board entered an order containing findings of facts and conclusions of law; in its order, the Board determined that Williams's conduct warranted disciplinary action and imposed sanctions, including a 3-month suspension of his nursing license and a subsequent 24-month period of probationary licensure status.
Pursuant to § 41-22-20, Ala. Code 1975, Williams sought judicial review in the Montgomery Circuit Court of the Board's order. After the parties had filed written submissions in support of their respective positions, the circuit court entered a judgment reversing the Board's order as unlawful. The judgment did not cite any specific subdivision of § 41-22-20(k), Ala. Code 1975, which sets forth various grounds upon which an administrative agency's order may be reversed. However, the judgment plainly indicates the circuit court's agreement with Williams's argument that the Board's reliance upon the sexual-harassment charges lodged against Williams since 1991 was somehow violative *Page 995 
of constitutional due-process guarantees; the judgment stated, in pertinent part, that "[e]ven though [the] College and the [Board] are separate entities, they are still both entities with the State of Alabama" and "[t]he State of Alabama cannot have two bites at the apple."
Our standard of review mirrors that of the circuit court:
 "`Judicial review of an agency's administrative decision is limited to determining whether the decision is supported by substantial evidence, whether the agency's actions were reasonable, and whether its actions were within its statutory and constitutional powers. Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency."'
Ex parte Alabama Bd. of Nursing, 835 So.2d 1010, 1012
(Ala. 2001) (quoting Alabama Medicaid Agency v.Peoples, 549 So.2d 504, 506 (Ala.CivApp. 1989)).
We first address two preliminary contentions asserted by the Board. The Board first asserts that Williams's arguments in the circuit court regarding remoteness in time and the preclusive effect of the actions of the College and the employee-review panel with respect to the various sexual-harassment allegations lodged against Williams were equivalent to the affirmative defenses of the doctrine of res judicata, collateral estoppel, or laches and that those defenses were not affirmatively pleaded before the Board. The Board further avers that §41-22-13(1), Ala. Code 1975, which provides that, as a general matter, "[t]he rules of evidence as applied in nonjury civil cases in the circuit courts of this state shall be followed" in contested cases before administrative agencies, mandates application of the rules of civil procedure, such as Rule 8(c), Ala. R. Civ. P., which requires the assertion of affirmative defenses in an response to a preceding pleading. However, no Alabama statute requires proceedings before the Board to comply with the Alabama Rules of Civil Procedure, and we are thus left to apply the general proposition that strict rules of court procedure do not govern administrative proceedings. See, e.g., Simpson v. Van Ryzin,289 Ala. 22, 30-31, 265 So.2d 569, 575-76 (1972); State ex rel.Steele v. Board of Educ. of Fairfield, 252 Ala. 254, 260,40 So.2d 689, 695 (1949). We thus cannot conclude that Williams's failure to "plead" the doctrine of res judicata, collateral estoppel, or laches during the administrative proceedings amounts to a waiver of those claimed defenses where, as here, they were adequately raised in the form of objections to evidence offered by the Board in the administrative hearing.
The Board also contends that the circuit court's judgment fails to comply with § 41-22-20(k), Ala. Code 1975, in that, the Board says, that court reversed the Board's order "on grounds other than those authorized by statute." We disagree. As we have noted, the circuit court appears to have concluded that the Board's actions deprived Williams of his nursing license without due process of law, which, if true, would amount at the least to a violation of state and federal constitutional provisions that guarantee due process. Reversal of an administrative order on that ground would be consistent with subsection (1) of §41-22-20(k).
However, we reach a different conclusion than the circuit court with respect to the principal question raised by the Board's appeal: whether the Board was prevented, either by the results of the previous investigations and hearings by the College involving the sexual-harassment allegations made against Williams or by the passage of time, from disciplining *Page 996 
Williams on the basis of the conduct evidenced by those allegations and by the testimony at the hearing tending to establish the truth thereof. Regardless of whether the circuit court's due-process holding is based upon Williams's prior-adjudication argument, upon his remoteness argument, or upon both arguments, neither amounts to a legally sufficient basis to disturb the Board's order.
We first consider the soundness of the circuit court's "two bites at the apple" reasoning. It is well settled that the doctrine of res judicata — a term which encompasses within its scope both claim preclusion and issue preclusion (seeMarshall County Concerned Citizens v. City of Guntersville,598 So.2d 1331, 1332 (Ala. 1992)) — may properly be said to apply to a previous agency decision "only when that decision is made after a trial-type hearing, i.e., `when what the agency does resembles what a trial court does.'" Kid's StuffLearning Ctr., Inc. v. State Dep't of Human Res.,660 So.2d 613, 617 (Ala.Civ.App. 1995) (quoting II K. Davis R. Pierce, Jr., Administrative Law Treatise § 13.3 at 250 (3d ed.1994)); accord, Restatement (Second) ofJudgments § 83(2) (1982) (administrative adjudication is conclusive "only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication," such as notice and the right to present and rebut evidence). As we have noted, four separate sexual-harassment complaints were made to the College: one in 1991-92 by complainant J.B. regarding conduct allegedly occurring in 1991, one in 1994 by complainant C.S. regarding conduct allegedly occurring in 1994, one in 2000 by complainant V.P. regarding conduct allegedly occurring in 1999 and 2000, and one in 2001 by complainant K.S. regarding conduct allegedly occurring in 2000 directed toward K.S.'s then-wife, S.S. However, a "trial-type" proceeding did not ensue in response to any one of those complaints; at the most, investigative inquiries and determinations were made in each case by College personnel (and, in K.S.'s case, by the Department of Postsecondary Education). As to those complaints, then, there has not been shown any adjudication that would warrant the application of claim or issue preclusion principles under Kid's Stuff.
However, the record also reflects that the president of the College, in her letter explaining the rationale for terminating Williams's employment, cited the existence of previous sexual-harassment complaints against Williams. The employee-review panel considering Williams's appeal from the termination did hold a trial-type hearing, and the judgment entered on certiorari review by the Mobile Circuit Court indicates that substantial evidence supported the panel's decision; specifically, the reviewing court noted that "there was substantial evidence to rebut the charges of sexual harassment made against" Williams. It is thus arguable, then, that the decision of the employee-review panel, which was affirmed on certiorari review and on further appeal, does constitute a decision as to which claim or issue preclusion may potentially apply, and we will so assume.
However, to the extent that the circuit court's judgment is based upon claim or issue preclusion arising from the employee-review panel's decision, we must conclude that it is erroneous. It is well settled that for claim preclusion or issue preclusion to arise, there must be, at a minimum,substantial identity of the parties to the former adjudication. See generally Stewart v. Brinley,902 So.2d 1, 9 (Ala. 2004).
Contrary to the intimation of the circuit court, the Board is not "substantially identical" to the College, even though *Page 997 
both are instrumentalities of the State of Alabama. The Board is a governmental agency organized in order to regulate the practice of professional nursing by persons throughout the state, whereas the College is an institution of higher learning established to educate students in various academic fields. The State's undertaking of disciplinary action against Williams in such different capacities does not give rise to claim or issue preclusion in that "[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity."Restatement (Second) of Judgments § 36(2) (1982). Comment f to that section of the Restatement is particularly instructive here:
 "In some circumstances, a prior determination that is binding on one agency and its officials may not be binding on another agency and its officials. The problem is analogous to that in determining the capacity in which the underlying transactions were conducted where private parties are concerned. If the second action involves an agency or official whose functions and responsibilities are so distinct from those of the agency or official in the first action that applying preclusion would interfere with the proper allocation of authority between them, the earlier judgment should not be given preclusive effect in the second action."
Restatement (Second) of Judgments § 36 comment f (emphasis added).
The conclusion we draw here is by no means unique in American jurisprudence. In Newberry v. Florida Department of LawEnforcement, Criminal Justice Standards TrainingCommission, 585 So.2d 500 (Fla.Dist.Ct.App. 1991), a law-enforcement officer who was required to be certified by a state agency as a condition of her employment with a county school board was terminated from her employment by the school board. Although the officer's employment was later reinstated by a hearing officer, the facts giving rise to the termination action were reported to the state agency, which undertook proceedings to revoke the officer's law-enforcement certification. The appellate court agreed with the state agency that neither claim preclusion nor issue preclusion barred the agency from revoking the officer's law-enforcement certification, holding that "`the doctrines of res judicata or estoppel by judgment are not applicable under the facts of the case where two separate and distinct governmental units independently considered similar factual allegations] but for different purposes.'" 585 So.2d at 501 (quoting Todd v.Carroll, 347 So.2d 618, 619 (Fla.Dist.Ct.App. 1977));accord, Lusardi Constr. Co. v. Aubry, 1 Cal.4th 976,995, 824 P.2d 643, 655, 4 Cal.Rptr.2d 837, 849 (1992) ("The acts of one public agency will bind another public agency only when there is privity, or an identity of interests between the agencies."), and Lamborn v. Workmen's Compensation AppealBd., 656 A.2d 593, 596 (Pa.Commw.Ct. 1995) ("for collateral estoppel to apply between administrative agencies, there must be a showing that the policies and goals underlying the matter at issue are the same in both proceedings").
Having concluded that the Board is not bound by the acts of the employee-review panel or by the administrative investigations undertaken on the part of the College or the Department of Postsecondary Education, we next consider whether the circuit court's judgment was correct because of the lapse of time between the first accusation made against Williams and the Board's institution of proceedings. There is no applicable statute *Page 998 
placing a time limitation upon Board disciplinary proceedings, and "[i]n the absence of specific legislative authority, civil or criminal statutes of limitation are inapplicable to administrative proceedings." Chafian v. Alabama Bd. ofChiropractic Exam'rs, 647 So.2d 759, 762 (Ala.Civ.App. 1994). Under Chafian, "[w]here there is no statutory time limitation applicable to the administrative proceeding, the issue of whether the action should be barred by time depends on the question of laches"; however, "[t]he party asserting laches bears the burden of proving that the delay was unreasonable and that prejudice resulted from the delay." Id. Williams has made no showing that he has been prejudiced by the Board's institution of disciplinary proceedings based upon such traditional elements of prejudice as "unavailability of witnesses, changed personnel, and the loss of pertinent records" (see Ex parte Grubbs, 542 So.2d 927, 929 (Ala. 1989)); indeed, Williams testified at some length before the Board concerning many of the sexual-harassment allegations that had been lodged against him and presented testimony of several witnesses, both instructors and former students, that was generally favorable to him. We thus cannot affirm the circuit court's judgment to the extent that it is based upon remoteness.
Further, we reject Williams's contention that the circuit court's judgment of reversal is due to be affirmed because, he says, the Board's order is not supported by substantial evidence. To the contrary, a review of the evidence adduced during the Board hearing reveals that substantial evidence was adduced that Williams had engaged in inappropriate or unprofessional conduct. For example, J.B., the former student at the College who reported having been sexually harassed by Williams in 1991, testified at the Board hearing that she had taken courses from Williams in Medical Surgical Nursing and Critical Care Nursing during that year. According to J.B.'s testimony, during a visit by Williams to her mother's home that was ostensibly for the purpose of providing academic assistance, Williams told J.B. that "if he did something for [her], [she] would have to do something for him"; he then made an attempt to kiss J.B., which she rebuffed by turning her head. J.B. also testified that on another occasion, when she had asked Williams how he could help her raise her grade in the course she was taking from him during that academic term, he had responded by writing the word "intimacy" on a piece of paper and had given it to J.B., a proposition J.B. refused.
The record further reveals that during Williams's testimony on direct examination during the Board hearing, the termination letter sent to Williams by the president of the College was admitted into evidence. Because that letter described Williams's personnel file as containing "a number of student complaints, counsel for the Board asked Williams whether he had been investigated on other occasions regarding student complaints of a sexual nature, at which time Williams admitted that in addition to J.B., two other students, V.P. and C.S., had made such complaints. The complaint letters from V.P. and C.S. were then admitted into evidence despite hearsay objections.[1] *Page 999 
To be sure, Williams disputed the veracity of J.B., V.P., and C.S., and adduced testimony from other students and from College personnel tending to prove that he would not have sexually harassed students. However, our review, just like that of the circuit court, is limited to ascertaining whether the Board's order is supported by "substantial evidence," i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989); accord, Ex parte Williamson, 907 So.2d 407,414-15 (Ala. 2004) (applying West definition in administrative setting). In no event is a reviewing court "authorized to reweigh the evidence or to substitute its decisions as to the weight and credibility of the evidence for those of the agency." Ex parte Williamson,907 So.2d at 416-17. We conclude that the Board's order disciplining Williams is supported by substantial evidence.
Williams also seeks affirmance of the circuit court's judgment on the basis that the Board's order, he says, improperly referred to the finding, contained in the determination of the employee-review panel that overturned the termination of Williams's employment, that Williams had confronted a female coworker "in a manner unbecoming to a faculty member." Williams contends that the Board's reference to that finding demonstrates that the Board "improperly relied upon a matter beyond the scope of the charges" set forth in the "Statement of Charges and Notice of Hearing." While the Board's statement of charges did not refer to that finding, evidence of that finding, in the form of the review panel's order itself, was submitted byWilliams himself during the Board's hearing, and no conditions were placed upon its offer or acceptance into the evidentiary record. It is well settled that "`[a] party may not predicate an argument for reversal on "invited error," that is, "error into which he has led or lulled"'" the pertinent adjudicative body. Wood v. State Pers. Bd.,705 So.2d 413, 422 (Ala.Civ.App. 1997) (quoting Atkins v. Lee,603 So.2d 937, 945 (Ala. 1992), quoting in turn Dixie HighwayExpress, Inc. v. Southern Ry., 286 Ala. 646, 651,244 So.2d 591, 595 (1971)). Williams, having introduced the employee-review panel's determination into evidence for the Board to consider, cannot now be heard to complain that the Board did consider that evidence in rendering its disciplinary order.
Having determined that the Board's order was properly entered, we reverse the circuit court's judgment, and we remand the cause for that court to enter a judgment affirming the Board's order.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and THOMPSON, J., concur.
MURDOCK and BRYAN, JJ., concur in the result, without writing.
[1] Administrative agencies, such as the Board, "are not restricted to a consideration of evidence which would be legal in a court of law and may consider evidence of probative force even though it may be hearsay or otherwise illegal." Estesv. Board of Funeral Serv., 409 So.2d 803, 804 (Ala. 1982);see also Ala. Code 1975, § 41-22-13(1) (allowing admission in administrative hearings of evidence "of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs," even if such evidence would be inadmissible in judicial proceedings). *Page 1000