[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1081 
Mavis Susan Rogers Thornton appeals from the Montgomery Circuit Court's judgment affirming the decision of the Alabama Board of Nursing ("the Board") to suspend her nursing license. We reverse the judgment and remand the case with instructions.
 Facts
Thornton is a registered nurse and has been licensed by the Board since 1991. She has applied for a renewal of her license every two years beginning in 1992. The Board has granted each renewal application based on information provided by Thornton. At the time the Board instituted the proceedings underlying this action, Thornton's license was set to expire at the end of December 2006.
In November 2004, Thornton was assigned to work at Baptist Medical Center East ("Baptist Medical") in Montgomery by a nursing staffing agency through which she was employed. Thornton underwent drug testing by Baptist Medical as part of a routine preemployment drug screening. On November 10, 2004, Thornton tested positive for carboxy THC, the active metabolite of marijuana. A medical-review officer verified the test result and eliminated any possibility of a false positive test result. Baptist Medical reported the positive test result to the Board.
Upon investigating the matter, Board officers discovered that Thornton had been arrested on December 27, 1995, on charges of driving under the influence and driving on the wrong side of the road. As a result of that arrest, Thornton pleaded guilty to reckless driving on April 9, 1997, and the court dismissed the driving-under-the-influence charge. The Board officers also discovered that Thornton had been arrested for public intoxication on September 9, 1999, and that she had pleaded guilty to disorderly conduct as a result of that arrest on December 2, 1999. Thornton had not disclosed any of those arrests or convictions on her license-renewal applications although information regarding arrests and convictions for crimes other than minor traffic offenses was requested in the applications.[1] *Page 1082 
On October 3, 2005, the Board issued a "Statement of Charges" against Thornton alleging that her positive drug test, her arrests and convictions, and her failure to disclose her arrests and convictions violated several administrative regulations of the Board.[2] The Board ordered Thornton to appear for a hearing to show cause why her nursing license should not be revoked.
On December 7, 2005, after Thornton filed a response to the "Statement of Charges," the Board held a hearing before a hearing officer. At that hearing, Thornton denied that she was addicted to any drugs. She testified that she had not smoked marijuana, but that she had been in an automobile the night before the drug screening with her boyfriend while he had smoked marijuana and that, therefore, she may have inhaled second-hand smoke. She also presented and testified as to several drug-screen results taken before and after the positive drug test, all of which were negative. The Board's expert testified that passive inhalation in the circumstances described by Thornton could not have resulted in a positive drug-screen result. However, the expert admitted that the positive drug test did not indicate whether Thornton had a drug addiction. The expert also testified that the subsequent negative drug tests indicated that it was possible that Thornton did not have an ongoing substance-abuse problem. The expert testified that the overall pattern of drug testing revealed only a small, isolated use of marijuana.
Thornton admitted that she had not listed her arrests and convictions in response to the questions in the renewal applications. She testified that she believed that she did not need to disclose her driving-related offenses because she thought that they were minor traffic offenses. She also testified that she had forgotten her 1999 guilty plea by the time she filled out her 2000 license-renewal application on October 11, 2000. A Board witness testified that, under the Board's regulations, a "minor traffic offense" was considered to be any traffic offense other than driving under the influence.
On March 24, 2006, the hearing officer issued an order setting forth his findings of fact and conclusions of law. In the order, the hearing officer found, among other things, that Thornton was "addicted to the use of habit-forming drugs to such an extent as to render . . . her unsafe or unreliable as a licensee" and that she was "guilty of unprofessional conduct of a character likely to deceive, defraud, or injure the public in matters pertaining to health." The hearing officer found that Thornton had violated the following regulations of the Board: Ala. Admin. Code, Rule610-X-8-.03(1)(b), -.03(3)(a) (h), -.03(4)(a) (c), and -.03(6)(a) (x). As a result, the Board adopted the findings of the hearing officer and suspended Thornton's nursing license pending her evaluation for chemical dependency and physical and mental illness. The Board further held that if the results of the evaluation indicated that Thornton was not in need of chemical-dependency treatment, the Board would reinstate her license on a probationary status for 24 months. If, however, she was in need of treatment, the Board would reinstate her license on a probationary status for 60 months after she completed her treatment. *Page 1083 
Thornton appealed the decision to the Montgomery Circuit Court on April 19, 2006. On September 13, 2006, the circuit court affirmed the Board's decision. Thornton thereafter timely appealed to this court.
 Analysis
On appeal, Thornton argues (1) that the Board acted outside of its statutory authority in suspending her license and (2) that the Board's action in suspending her license was arbitrary and capricious.
"Our standard of review mirrors that of the circuit court:
 "`"Judicial review of an agency's administrative decision is limited to determining whether the decision is supported by substantial evidence, whether the agency's actions were reasonable, and whether its actions were within its statutory and constitutional powers. Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency."'"
Alabama Bd. of Nursing v. Williams, 941 So.2d 990,995 (Ala.Civ.App. 2005) (quoting Ex parte Alabama Bd. ofNursing, 835 So.2d 1010, 1012 (Ala. 2001), quoting in turnAlabama Medicaid Agency v. Peoples, 549 So.2d 504, 506
(Ala.Civ.App. 1989)).
Section 34-21-25(b), Ala. Code 1975, grants the Board the power to suspend the license of a nurse-licensee upon proof that the licensee:
 "is guilty of fraud or deceit in procuring or attempting to procure a license; has been convicted of a felony; is guilty of a crime involving moral turpitude or of gross immorality that would tend to bring reproach upon the nursing profession; is unfit or incompetent due to the use of alcohol, or is addicted to the use of habit-forming drugs to such an extent as to render him or her unsafe or unreliable as a licensee; has been convicted of any violation of a federal or state law relating to controlled substances; is guilty of unprofessional conduct of a character likely to deceive, defraud, or injure the public in matters pertaining to health or has willfully or repeatedly violated any of the provisions of this article, as defined by board rules and regulations. The board may refrain from or delay taking disciplinary action under this subsection if a licensee can be voluntarily treated or rehabilitated pursuant to subsection (j) of this section."
Pursuant to this enabling legislation, the Board adopted numerous regulations contained in the Alabama Administrative Code; the regulations relevant to this case provide, in pertinent part:
 "The Board may reprimand, fine, probate, suspend, revoke or otherwise discipline any registered nurse or licensed practical nurse upon proof that the person:
 "(1) Is guilty of fraud or deceit in procuring or attempting to procure a license by:
 ". . . .
 "(b) Misrepresenting or falsifying facts in applying for original licensure, renewal, reactivation, or reinstatement of license.
 ". . . .
 "(3) Has been convicted of, or has entered a plea of guilt, regardless of court disposition, to a charged criminal act involving moral turpitude or of gross immorality that would tend to bring reproach upon the nursing profession. Such criminal acts include, but are not limited to, offenses involving:
 "(a) Drugs.
 ". . . .
 "(h) Any other conduct detrimental to the public's health, safety or welfare. *Page 1084 
 "(4) Is unfit or incompetent due to the use of alcohol, or is addicted to the use of habit-forming drugs to such an extent as to render the registered nurse or licensed practical nurse unsafe or unreliable that includes but is not limited to:
 "(a) Testing positive for alcohol and/or unauthorized mood-altering drugs.
 ". . . .
 "(c) Obtaining an unauthorized prescription by fraudulent means for self use.
 ". . . .
 "(6) Is guilty of unprofessional conduct of a character likely to deceive, defraud, or injure the public in matters pertaining to health, that includes but is not limited to:
 "(a) Failure to comply with the Alabama Nurse Practice Act and rules and regulations as well as all federal, state or local laws, rules or regulations applicable to the area of nursing practice.
 ". . . .
 "(x) Practicing while the mental or physical ability to practice is impaired by any mood-altering drugs or substances or by a physical, mental, or emotional disorder that renders the registered nurse or licensed practical nurse unable to perform with reasonable skill and safety."
Ala. Admin. Code, Rule 610-X-8-.03.
Thornton initially asserts that, although § 34-21-25(b) and Rule 610-X--.03(4)(a) permit the Board to suspend a nursing license upon a finding based on substantial evidence that the licensee is addicted to the use of habit-forming drugs to such an extent as to render the licensee unsafe or unreliable as a licensee, the drug testing in this case proved she did not have an addiction to marijuana or any other habit-forming drugs and that her numerous exemplary job-performance evaluations negate any contention that she is unsafe or unreliable to practice nursing.
By utilizing the phrase "is addicted," the statute and Rule610-X-8-.03(4)(a) speak of an uncontrollable, almost involuntary, use of habit-forming drugs in temporal proximity to the disciplinary action. See Mississippi State Bd. ofNursing v. Wilson, 624 So.2d 485, 491 (Miss. 1993), citingColorado State Bd. of Nursing v. Crickenberger, 757 P.2d 1167 (Colo.CtApp. 1988). The Board presented no evidence other than the lone positive drug test to prove that Thornton had ever suffered an addiction to a habit-forming drug, much less that she had an ongoing substance-abuse problem at the time of the hearing. By the admission of the Board's own expert, the one positive drug test in this case does not indicate that Thornton is addicted to habit-forming drugs. The preceding and subsequent drug tests administered to Thornton tended to prove that Thornton did not have ah active addiction to any substance. Accordingly, as Thornton asserts, the Board's finding that she violated the addiction provision of § 34-21-25(b) and Rule610-X-8-.03(4)(a) was not supported by substantial evidence.[3]
The Board also erred in finding that Thornton had violated Ala. Admin. Code, Rule 610-X-8-.03(3)(a), -.03(4)(c), and -.03(6)(x). The Board presented no evidence indicating that Thornton had been convicted of a drug-related crime, and Thornton's testimony proved that her convictions did not involve offenses relating to drugs or drug use. See Rule 610-X-8-.03(3)(a). The record contains no evidence *Page 1085 
indicating that Thornton obtained an unauthorized prescription by fraudulent means for self-use. See Rule610-X-8-.03(4)(c). The Board also offered no evidence indicating that Thornton had practiced nursing while impaired by any mood-altering drugs. See Rule 610-X-8-.03(6)(x). Thornton denied these allegations. Thus, the Board erred in finding that Thornton had violated these regulations.
On the other hand, substantial evidence supported the Board's determination that Thornton had been convicted of crimes involving conduct detrimental to the public health, safety, or welfare in violation of Ala. Admin. Code, Rule 610-X-8-.03(3)(h). Thornton admitted that she had pleaded guilty to reckless driving and disorderly conduct. Thornton makes no argument that these offenses do not fall within the ambit of the regulation or that the regulation exceeds the statutory scope of §34-21-25(b). Accordingly, the Board did not err as to that finding.
We also conclude that substantial evidence supported the finding that Thornton violated Ala. Admin. Code, Rule610-X-8-.03(1)(b). The evidence indicated that Thornton had misrepresented her criminal history in her license-renewal applications. The Board could have reasonably concluded that Thornton was required to report every arrest and guilty plea and that she had unjustifiably failed to do so. Thornton does not argue that this regulation unreasonably defines "fraud or deceit in procuring . . . a license" or that the Board has acted arbitrarily and capriciously in defining "minor traffic offenses." Thus, the Board did not err in finding that Thornton violated Ala. Admin. Code, Rule 610-X-8-.03(1)(b).
The Board lastly concluded that Thornton had violated Ala. Admin. Code, Rule 610-X-8-.03(6)(a). However, the Board's findings do not specify the conduct that Thornton allegedly committed that constitutes a "[f]ailure to comply with the Alabama Nurse Practices Act and rules and regulations as well as all federal, state or local laws, rules or regulations applicable to the area of nursing practice." The foregoing analysis shows that Thornton violated two regulations applicable to the area of nursing practice by having been convicted of crimes involving conduct detrimental to public health, safety, or welfare and by failing to disclose her arrests and convictions for those crimes. However, this criminal conduct did not relate to a "matter pertaining to health" as Ala. Admin. Code, Rule 610-X-8-.03(6), requires. Hence, there was not substantial evidence to support the Board's finding that Thornton's conduct violated Ala. Admin. Code, Rule610-X-8-.03(6)(a).
Based on the foregoing, we reverse the circuit court's judgment affirming the Board's decision to suspend Thornton's license, and we remand the cause to the circuit court with instructions to remand the cause to the Board for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
[1] The 2000 renewal application actually requested information as to whether the applicant had felony or misdemeanor charges pending for offenses relating to alcohol and whether the applicant had pleaded guilty to any felony or misdemeanor since the last license renewal.
[2] The "Statement of Charges" also referenced an October 7, 1996, letter of concern the Board had issued to Thornton following a complaint that alleged that Thornton was abusing alcohol and prescription medication. At the hearing, the Board representative agreed that Thornton was not in violation of any regulations on account of the circumstances leading to the 1996 letter of concern. Hence, we will not discuss this allegation further.
[3] Because we find that the Board failed to prove that Thornton was addicted to habit-forming drugs, we do not consider the question whether Thornton's exemplary job-performance evaluations proved her alleged addiction did not impair her ability to safely and reliably practice nursing.