MOORE, Judge.
The Alabama Board of Nursing (“the Board”) appeals from a judgment of the Montgomery Circuit Court (“the circuit court”) reversing the Board’s decision to revoke Elizabeth Nalugo Kirya’s license to practice as a registered nurse. We reverse.

Facts and Procedural History

On March 19, 2009, the Board issued a statement of charges to Kirya, stating, in pertinent part:
“I.
“On April 21, 1995, [Kirya] was licensed by the' Alabama Board of Nursing as a Registered Nurse. [Kirya] was originally approved to practice as a Certified Registered Nurse Practitioner (CRNP) by the Alabama Board of Nursing on April 21, 1995. Her CRNP approval expired on December 81, 2006. [Kirya’s] RN license lapsed on December 31, 2008, for failure to renew.
“II.
“On May 21, 2004, the Board ... issued an Order suspending [Kirya’s] license until conditions were met. On August 26, 2004, the suspension was lifted and [Kirya’s] license was placed on probation for a period of twenty-four months. Said Order was issued based on facts including:
“• [Kirya’s] prescription of medication without documentation of a patient visit and subsequent failure to document notification from the emergency room that the patient had experienced an allergic reaction to the medication which required emergency treatment on two separate occasions
“• [Kirya’s] practice as a CRNP in violation of her collaborative practice approval between August 28, 2002 and November 4, 2003, while her collaborating physician was out of the country and she did not have an approved back-up physician
“• [Kirya’s] prescription of medications and controlled drugs for patients on two days using prescriptions that had been pre-signed by her collaborating physician for her use while he was out of the country
“• [Kirya’s] practice on multiple occasions at a practice site in Gadsden, Alabama, without notification to or approval from the [Board].
“HI.
“Stipulated Term Number 11 of [Kir-ya’s] Order of Probation provided that periods of time in which [Kirya] was not employed as a practicing nurse would be excluded from computation of time to be served on probation. [Kirya’s] only documented period of employment as a RN since the issuance of the Order of Probation in 2004 is her employment as a RN at Riverview Regional Medical Center (RRMC) from April 3, 2006, until January 26, 2007. Thus, [Kirya] has completed only 10 of the 24 months of practice as a RN required for successful completion of her Order of Probation.
“IV.
“Stipulated Term Number 4 of [Kir-ya’s] Order of Probation required [Kir-ya] to submit self-reports to the Board on a monthly basis by the 10th of the month. Self-reports were required to be submitted regardless of whether [Kirya] was employed in nursing.
“The Board has not received the self-reports due on the tenth of September, October, November, and December of 2007; nor the self-reports due on the tenth of January, February, March, April, May, and June of 2008.
“V.
“Stipulated Term Number 9 of [Kir-ya’s] Order of Probation required [Kir- *319 ya] to cause her employer to provide to the Board on a Board-approved form a written evaluation of [Kirya’s] nursing performance every three months and further required that receipt of an unfavorable report may be considered a violation of the Order. On February 6, 2007, the Board received notice that on January 26, 2007, [Kirya] was separated from Riverview Regional Medical Center, Gadsden, Alabama. According to the Corrective Action/Discipline Record, [Kirya] was separated due to failure to respond to urgent care issues with a postoperative patient experiencing complications.
“The only Employer Report provided to the Board was the one for April to June 2007, a time period during which [Kirya] was not employed by RMC; however, this form was received by the Board in January 2007. The Board did not receive the employer reports due on the tenth of July and October of 2006.
“VI.
“Stipulated Term Number 12 of [Kir-ya’s] Order of Probation required [Kir-ya] to maintain a current license at all times during the period of the Order. [Kirya’s] license lapsed on December 31, 2008, for failure to renew.
“VII.
“By letter of November 6, 2007, [Kir-ya] was advised of deficiencies in her reporting that constituted violations of her Board Order. [Kirya] did not respond to this letter. By certified letter of December 12, 2007, [Kirya] was again advised of deficiencies in her reporting that constituted violations of her Order. Postal records reflect that this certified mail letter was delivered on January 4, 2008. [Kirya] did not respond to this letter. [Kirya] was again advised of deficiencies in her reporting that constituted violations of her Order by certified letter
. of February 21, 2008. Notice of this letter was left twice for Kirya, and the letter was subsequently returned to the Board marked ‘return to sender,’ ‘unclaimed,’ ‘unable to forward.’ [Kirya] did not respond to this letter.
“COUNT ONE
“[Kirya’s] conduct as described in Paragraphs II through VII above demonstrates that [Kirya] has willfully or repeatedly violated the provisions of Article 2 of the Alabama Nurse Practice Act as defined by Board rules and regulations by failing to comply with stipulated terms and conditions of a Board Order, in violation of Code of Alabama 1975, § 34-21-25 and Alabama Board of Nursing Administrative Code § 610-X-8-.03(8)(d).
“COUNT TWO
“[Kirya’s] conduct as described in Paragraph VII above demonstrates that [Kirya] failed to respond to official Board correspondence including requests for information and notices. In violation of Code of Alabama 1975, § 34-21-25 and Alabama Board of Nursing Administrative Code § 610-X-8-.03(7)(a) and (c).
“PRAYER FOR RELIEF
“WHEREFORE, Complainant, in her capacity as the Executive Officer of the [Board], requests that, upon hearing and proof, [Kirya] be found guilty of the aforementioned violations and that the [Board] revoke [Kirya’s] RN license and CRNP approval.”
A hearing was held before a hearing officer on May 19, 2009. At the commencement of the hearing, the parties stipulated to the facts set forth in the following numbered charges: I, II, III, and VI. The parties also stipulated to the facts set forth in the first paragraph of charge V; the Board dropped the factual allegations set forth in the second paragraph of *320 charge V. Thus, the only disputed facts were those set forth in charges IV and VII.
At the hearing, David Pinnock, an investigator for the Board, testified that Kirya’s probation order required her to submit monthly self-reports. He testified that he reviews monthly self-reports as they come in and that they are then scanned into the computer system. He testified that the electronic record as well as his paper files indicate that Kirya’s self-reports from September 2007 until June 2008 had not been submitted. Pinnock testified that he had mailed Kirya correspondence notifying her of the deficiencies in submitting the self-reports. Specifically, Pinnock testified that he had mailed a letter to Kirya dated November 6, 2007, and that he had sent Kirya a letter on December 12, 2007, and in February 2008 by certified mail. He testified that he had received a return mail receipt on the December 12, 2007, letter indicating that it had been delivered but that there was no signature indicating who had received the letter. Pinnock testified that the February 2008 letter had been returned marked “unclaimed” and “unable to forward.” Pinnock admitted that other people had claimed to.,have mailed self-reports that he had not received. He testified that those discrepancies could be due to the person’s not actually mailing the self-report or a problem with , the mail system.
Pinnock testified that he had received a corrective-action discipline record from Riverview Regional Medical Center indicating that Kirya had been separated from her employment there due to her failure to respond to urgent-care issues with a postoperative patient who had been experiencing complications. Pinnock testified that he had made a notation that he spoke with Marye Elliott at Riverview and that she had stated that Kirya had resigned due to health issues.
Kirya testified that, in November 2007, she had traveled to Uganda to visit her mother. She testified that she had planned on returning home in January 2008 but that she had ended up staying until May 2008 because she contracted malaria. Even though she stated that she had planned to return in January, Kirya also stated that, before she left for Uganda, she had completed the self-reports that were due in November 2007 through May 2008 and had asked her husband to mail the self-reports that were due during the months she would be out of the country. Kirya first testified that she had not received the letters that Pinnock testified he had sent her, but she later admitted that she had received the letter he sent in November 2007 and that she had responded in a letter dated November 16, 2007. Pinnock testified that he had not received Kirya’s November 16, 2007, letter.
Kirya testified that there had been an incident involving a post-operative patient when she worked at Riverview but that she was not aware of anything she had done improperly. She testified that she had been assigned to attend to two postoperative patients. According to Kirya, while she was in the room with-one patient, another nurse noticed that the second patient was experiencing complications. Kirya testified that she instructed the other nurse to call the emergency team and that she did not go to assist because the emergency team was available. Kirya testified that she did not leave her employment at Riverview as a result of that incident but, instead, that she had left for health reasons. She admitted, however, that she had signed her corrective-action plan the same day she submitted her resignation.
*321 Kirya testified that she realized that her nursing license had lapsed on December 31, 2008, when she did not receive her license card. She testified that she had overlooked the requirement to renew it and that she had been dealing with health problems. She testified that she took no action in renewing her license until she received a letter from the Board regarding her failure to renew her license.
On June 22, 2009, the hearing officer issued his findings of fact and conclusions of law. His findings were, in pertinent part:
“6. The Board did not receive the self-reports due on the tenth (10th) of September, October, November and December of 2007; nor the self-reports due on the tenth (10th) of January, February, March, April, May and June of 2008.
“7. Stipulated Term Number 9 of [Kirya’s] Order of Probation required [Kirya] to cause her employer to provide to the Board on a Board-approved from a written evaluation of [Kirya’s] nursing performance every three (3) months and further required that receipt of an unfavorable report may be considered a violation of the Order. On February 6, 2007, the Board received notice that on January 26, 2007, [Kirya] was separated from Riverview Regional Medical Center, Gadsden, Alabama. According to the Corrective Action/Discipline Record, [Kirya] was separated due to failure to respond to urgent care issues with a post-operative patient experiencing complications. [Kirya] disputed both the incident cited by Riverview and the reason given by Riverview for her separation. In regard to the latter, [Kirya] testified that a knee injury prevented her from being on her feet as long as required by her assignment. Resp. Exh. 3 is a copy of [Kirya’s] letter of resignation from Riverview, which cites health issues. [Kirya] also provided evidence of a degenerative knee injury, which resulted in her knee pain.
“8. The incident cited by Riverview as the basis for [Kirya’s] separation involved a complication of a post-operative (thyroidectomy) patient assigned to [Kirya]. Another nurse discovered the patient to be in breathing difficulty. At the time, [Kirya] was caring for another post-operative patient, and when notified by the other nurse of the situation she instructed others to call the hospital’s emergency response team. The patient had emergency surgery to address the problem, although there is no indication in the record that [Kirya’s] conduct changed the patient’s course of treatment or recovery.
“9. Stipulated Term Number 12 of [Kirya’s] Order of Probation required [Kirya] to maintain a current license at all times during the period of the Order. [Kirya’s] license lapsed on December 31, 2008, for failure to renew. [Kirya] testified that she failed to renew her license because she was in the midst of several medical issues, including radiation treatment for hyperthyroidism, and simply overlooked it. She discovered the oversight much later, when she didn’t receive her license card from the Board. She wrote the Board in February of 2009, explained the circumstances, and asked to renew her license, if allowed.
“10. By letter of November 6, 2007, [Kirya] was advised of deficiencies in her reporting that constituted violations of her Board Order. [Kirya] did not respond to this letter. By Certified Mail letter of December 12, 2007, [Kir-ya] was again advised of deficiencies in her reporting that constituted violations of her Order. Postal records reflect that this Certified Mail letter was deliv *322 ered to [Kirya’s] address of record on January 4, 2008. [Kirya] did not respond to this letter. [Kirya] was again advised of deficiencies in her reporting that constituted violations of her Order by Certified Mail letter of February 21, 2008. Notice of this letter was left twice for [Kirya], and the letter was subsequently returned to the Board marked ‘return to sender,’ ‘unclaimed,’ ‘unable to forward.’ [Kirya] did not provide a written response to this until she made a formal response to the Statement of Charges.
“11. [Kirya] testified that she mailed the missing self-reports to the Board in September and October of 2007, but was out of the country during the remaining period. [Kirya] testified that she filled out some of the self-reports and left them for her husband to submit for her while she was visiting her home country of Uganda, where it was impractical to send the forms to the Board. She had planned to return in January of 2008, but she was required to stay in Uganda after she contracted malaria. She acknowledged that she received notice of the missing 2007 reports. Mr. Pinnock testified that he had telephone conversations with [Kirya] during this period and was aware of [Kirya’s] claims she had resigned from Riverview Medical Center due to health problems.
[[Image here]]
“12. [Kirya’s] conduct ... demonstrates that [Kirya] has willfully or repeatedly violated the provisions of Article 2 of the Alabama Nurse Practice Act as defined by Board rules and regulations by failing to comply with stipulated terms and conditions of a Board Order, in violation of Code of Alabama, (1975) § 34-21-25 and Alabama Board of Nursing Administrative Code, § 610-X-8-.03(8)(d).
[[Image here]]
“13. [Kirya’s] conduct as described in Paragraph 10 above demonstrates that [Kirya] failed to respond to official Board correspondence including requests for information and notices, in violation of Code of Alabama, (1975) § 34-21-25 and Alabama Board of Nursing Administrative Code, § 610-X-8-.03(7)(a) and (c).”
The hearing officer recommended that Kirya’s “existing probation be extended for a period of twenty-four (24) months under existing terms and conditions, subject to renewal of [Kirya’s] license in compliance with Board regulations.” On July 21, 2009, the Board issued its order, adopting the hearing officer’s findings of fact but rejecting the recommendation of the hearing officer to extend Kirya’s probation. Instead, the Board revoked Kirya’s license. Kirya filed her notice of appeal to the circuit court on August 11, 2009.
On February 17, 2010, the circuit court entered a judgment reversing the Board’s order and adopting the recommendation of the hearing officer. The circuit court’s findings of fact and conclusions of law state, in pertinent part:
“A. Self Reports
“Kirya’s undisputed testimony establishes that her monthly self-reports were in fact submitted to the [Board] for the time period covering August 2007 through June 2008. As noted by Pin-nock, the failure to receive the reports may be attributable to on-going problems with the [Board’s] mail system, or the forms may have simply been lost by the [Board] as with other forms. In any case, the [Board] had absolutely no basis for dismissing or discounting this undisputed testimony.
“B. Unfavorable Employer Report
“The unfavorable employer report is simply not supported by the evidence. *323 Kirya denied any wrongdoing involving the patient incident cited in the report and no testimony was offered establishing that Kirya was separated from her employment at Riverview due to any wrongdoing. In fact, the undisputed evidence from both Marye Elliott (the employer representative) and Kirya clearly establishes that Kirya resigned her position due to on-going health issues. The [Board] had no basis for finding the unsupported report or misconduct credible.
“C. Not Maintaining Current License
“While it is undisputed that Kirya failed to renew her license, the [Board] appears to have overlooked the reasonable and ... legitimate reason offered in mitigation of this violation, and instead, has imposed an excessive punishment for this technical violation.
“D. Not Responding to Correspondence
“Kirya’s undisputed testimony establishes that at the time the December 12, 2007 and February 21, 2008 letters were sent to her, she was out of the country. No evidence was offered establishing that Kirya received these letters and intentionally failed to respond to same. The [Board] had absolutely no basis for dismissing or discounting these undisputed facts. With respect to the letter of November 6, 2007, Kirya testified that she responded to this letter on November 16, 2007.

“Conclusion

“In the end, there can be little doubt that the imposition of the harsh sanction of revocation of Kirya’s nursing license is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record and amounts to an unreasonable, arbitrary, or capricious decision, or is one characterized by an abuse of discretion.”
The Board filed a motion to alter, amend, or vacate the circuit court’s judgment on February 18, 2010; that motion was denied on March 18, 2010. The Board filed its notice of appeal to this court on March 25, 2010.

Standard of Review

“Our standard of review mirrors that of the circuit court:
“‘“Judicial review of an agency’s administrative decision is limited to determining whether the decision is supported by substantial evidence, whether the agency’s actions were reasonable, and whether its actions were within its statutory and constitutional powers. Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency.” ’ ”
Alabama Bd. of Nursing v. Williams, 941 So.2d 990, 995 (Ala.Civ.App.2005) (quoting Ex parte Alabama Bd. of Nursing, 835 So.2d 1010, 1012 (Ala.2001), quoting in turn Alabama Medicaid Agency v. Peoples, 549 So.2d 504, 506 (Ala.Civ.App.1989)).

Discussion

The Board makes several arguments on appeal. We find dispositive the Board’s argument that the circuit court erred in concluding that the Board’s decision to revoke Kirya’s license was a “harsh sanction” that was “clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record and amounts to an unreasonable, arbitrary, or capricious decision, or is one characterized by an abuse of discretion.”
In Ex parte Alabama Board of Nursing, 835 So.2d 1010 (Ala.2001), the Alabama Supreme Court granted certiorari review *324 to determine whether this court had erred in affirming the circuit court’s decision to reverse the Board’s revocation of the license issued to Donna Jacquelyn Stejskal, a registered nurse. The supreme court reasoned:
“Based on the facts before us, we conclude that the Board’s decision to revoke Stejskal’s license was supported by substantial evidence; that it was reasonable; and that it was within the Board’s constitutional and statutory authority. Pursuant to the terms of her probation, Stejskal was required to inform the Board of any change in her employment status. It is undisputed that while Stejskal was employed by the cardiologist she sought and obtained additional, part-time employment with Eastern Shore Healthcare Facility, a nursing home facility. After she was employed at Eastern Shore, Stejskal submitted four self-reports to the Board; she did not report her employment with Eastern Shore in any of those self-reports. Although Stejskal argues that the Eastern Shore position was only part-time and that it, therefore, did not constitute a ‘change of employment,’ it nevertheless constituted additional employment within the nursing field, a matter that is within the Board’s discretion to monitor.
“Also pursuant to the terms of her probation, Stejskal was required to notify any employer or potential employer of her probationary status and to provide the employer with a copy of the order of probation. Stejskal’s employer was also required to submit quarterly reports regarding Stejskal’s job performance. Although Stejskal testified that she had informed Tina Webber, the Eastern Shore personnel director who had hired her, of her probationary status, Martha Howell, personnel director at Eastern Shore at the time of the discovery of the alleged violations, testified that Stejskal had never notified her of her probationary status. Moreover, Eastern Shore did not have a copy of the order of probation in its file before it discovered Stejskal’s probation violation, and Eastern Shore never submitted any reports to the Board.
“Stejskal had been convicted of bank fraud, a crime involving theft and dishonesty. Because a nurse has access to many things of value, such as drugs, supplies, and the personal property of patients, the Board chose to monitor Stejskal’s return to the practice of nursing. Because of the continued dishonesty regarding her employment during the last few months of her probation, the Board again revoked Stejskal’s license.
“Because Stejskal violated the specific terms of her probation, the Board acted within its discretion in revoking her license and the trial court erroneously reversed its decision.”
835 So.2d at 1013-14.
Similarly, in the present case, Kirya had been disciplined for the “prescription of medication without documentation of a patient visit and subsequent failure to document notification from the emergency room that the patient had experienced an allergic reaction to the medication which required emergency treatment on two separate occasions”; practicing as a certified registered nurse practitioner and prescribing medications and controlled drugs while her collaborating physician was out of the country; and “practice on multiple occasions at a practice site in Gadsden, Alabama, without notification to or approval from the [Board].” Based on those violations, the Board chose to monitor Kirya’s practice of nursing. In the probation order, the Board and Kirya stipulated that Kirya would, among other things, submit *325 monthly self-reports to the Board and maintain a current license. The probation order also required Kirya to have her employer provide an evaluation to the Board every three months and stated that the receipt of an unfavorable report might be considered a violation of the order.
At the May 19, 2009, hearing before the hearing officer, there was substantial evidence presented indicating that Kirya had failed to submit her monthly self-reports in violation of her stipulated probation order, which in turn amounted to a violation of § 34-21-25, Ala.Code 1975,[1] and Rule 610-X-8-.03(8)(d), Ala. Admin. Code (Board of Nursing),[2] and that Kirya had failed to respond to Board correspondence in violation of § 34-21-25 and Rule 610-X-8-.03(7)(a) and (c), Ala. Admin. Code (Board of Nursing).[3] Further, it was stipulated that Kirya had failed to renew her license and that the Board had received an unfavorable report, i.e., a corrective-action notice from Riverview. Although there was evidence indicating that Kirya had resigned from her employment at Riverview due to health reasons, that evidence did not obviate the fact that the Board had received an unfavorable report.
Based on the foregoing, we conclude that the Board’s “ ‘ “decision [was] supported by substantial evidence, [that the Board’s] actions were reasonable, and [that] its actions were within its statutory and constitutional powers.” ’ ” Williams, 941 So.2d at 995. Considering the presumption that the Board’s action in revoking Kirya’s license was correct, id., we conclude that the circuit court erred in reversing the Board’s decision. Thus, we reverse the judgment of the circuit court and remand this cause to the circuit court with instructions for that court to enter a judgment affirming the Board’s July 21, 2009, order.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. Section 34-21-25(b)( 1 )h., Ala.Code 1975, provides:
"The board may also deny, revoke, or suspend any license issued by it or otherwise discipline a licensee upon proof of any of the following regarding the licensee:
[[Image here]]
"h. Has willfully or repeatedly violated this article, as defined by board rules and regulations.”

. Rule 610-X-8-.03(8)(d) provides:
"The Board may reprimand, fine, probate, suspend, revoke or otherwise discipline any registered nurse or licensed practical nurse upon proof that the person:
[[Image here]]
"(8) Has willfully or repeatedly violated any of the provisions of a statute or rule that includes but is not limited to:
[[Image here]]
"(d) Failure to comply with any stipulated terms and conditions of any Board order or contract.”

.Rule 610-X-8-.03(7)(a) and (c) provide:
"The Board may reprimand, fine, probate, suspend, revoke or otherwise discipline any registered nurse or licensed practical nurse upon proof that the person:
[[Image here]]
"(7) Failure to respond to official Board correspondence, including but not limited to:
“(a) Requests for information.
[[Image here]]
"(c) Notices.”